COMMONWEALTH vs. NHUT HUYNH.

Hampden. September 5, 2008. - October 28, 2008.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, & BOTSFORD, JJ.

*Homicide. Practice, Criminal,* Capital case, Required finding, New trial. *Evidence,* Photograph, Videotape.

At the trial of indictments charging murder in the first degree, the judge did not err in denying the defendant's motion, made at the close of all evidence in the case, for required findings of not guilty, where the Commonwealth's evidence had not deteriorated as a result of the defendant's introduction in evidence of videotapes that, he argued, demonstrated that he had not shot one of the victims, in that the defendant's case depended on the credibility of witnesses to interpret the videotapes (which were blurry and of poor quality) and, therefore, did not definitively establish his innocence. [485-486]

A Superior Court judge did not err in denying the criminal defendant's motion for a new trial based on photographic evidence (i.e., enlargements of frames of a videotape) that, the defendant argued, reliably demonstrated that he had not shot the victims, where the photographs alone did not establish when one of the victims was shot, and the videotape and photographic evidence, together with the affidavit of the defendant's investigator, did not refute the Commonwealth's theory of the case or demonstrate that the defendant could not have shot the victims; further, because the defendant's motion essentially was a recapitulation of the defense at trial, the judge, who was also the trial judge, did not abuse his discretion in declining to conduct an evidentiary hearing. [486-488]

This court declined to exercise its power under G. L. c. 278, § 33E, to order a new trial or reduce verdicts of murder in the first degree, where photographic evidence on which the defendant relied did not itself establish when one of the victims was shot; where two eyewitnesses testified that they saw the defendant shoot that victim, and one of those witnesses also testified that he saw the defendant shoot the other victim; where the evidence of consciousness of guilt was very strong; and where the defendant had a motive to harm one of the victims. [488-489]

INDICTMENTS found and returned in the Superior-Court Department on September 6, 2002.

The cases were tried before *Peter A. Velis*, J., and a motion for a new trial, filed on March 28, 2006, was considered by him.

*Stephen Paul Maidman* for the defendant.

*Bethany C. Lynch*, Assistant District Attorney, for the Commonwealth.

SPINA, J. The defendant was convicted of the deliberately premeditated murders of Huan Nguyen and Tuan Nguyen[1] in Springfield on June 15, 2002. He filed a motion for a new trial alleging, in part, that the evidence reliably demonstrates that the defendant did not shoot the victims, and that the Commonwealth relied on false testimony to convict him. He appeals from the denial of his motion for a new trial, and from the judge's denial of his request for an evidentiary hearing. That appeal has been consolidated with his direct appeal, in which he argues error in the denial of his motion for required findings of not guilty at the close of all the evidence. We affirm the convictions and the denial of his motion for a new trial without an evidentiary hearing. We also decline to grant relief under G. L. c. 278, § 33E.

1. *Facts.* The jury could have found the following facts beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). On June 8, 2002, the defendant drove himself and some friends from Connecticut to the Vy Da Café (club) in Springfield. The defendant took offense when Tuan Nguyen (Tuan), one of the victims, bumped into him outside the club. He pushed Tuan with both hands. Alvin Truoung (Truoung), the manager, witnessed the incident and told Tuan to go inside. Tuan then complied. Truoung told the defendant that Tuan was his younger brother, and not to make trouble for him. The defendant replied, "I cannot promise you anything would or would not happen to him." The evening ended without further incident.

One week later on June 15, 2002, the defendant drove some of his friends to the club in a black Acura sedan. Tuan and some friends also went to the club. After a period of time the defendant and Tuan went outside and happened to be in front of the club at the same time. The defendant began arguing with Tuan about the incident the week before. Friends of both men, and other patrons of the club, also appeared outside and watched. Approximately

[1]The victims were not related.

ten to twenty people in all had gathered. The defendant said to Tuan, "Last week, did you have a problem with me?" "You had a problem with me last week, do you want to take care of it now?" "If you want to settle it, let's do it right here now." His tone was loud, angry, and confrontational. He repeatedly moved his hand in and out of his inner jacket pocket, as if he were reaching for something. Tuan said he did not want any trouble.

Huan Nguyen (Huan), the other victim, went outside the club. He told the defendant that Tuan did not want any trouble, and asked why the defendant was looking for trouble. The defendant responded by asking why Tuan bumped into him and why he wanted to "mess with" him the week before. An unidentified person struck Huan in the back of the head, and a melee broke out. Thinh Dao,[2] a friend of the defendant, saw the defendant pull out a small .38 caliber handgun and shoot Tuan in the head. The defendant was standing in front of the front window of the club when he shot Tuan, the same place where they had been arguing. Dung Kieu, a friend of Tuan, heard a shot and saw Tuan start to fall. He tried to catch Tuan, and in the process he saw the defendant shoot Huan. Thinh Dao also saw the defendant shoot Huan.

After the shooting, Thinh Dao and the defendant fled in the defendant's black Acura automobile, nearly causing an accident. Another driver made a mental note of the registration number and gave the information to police, who traced the car to the defendant's sister. Thinh Dao and the defendant left three other friends behind with whom they had traveled from Connecticut to go to the club. Those friends, including the defendant's girl friend, had no ride home. The defendant stopped and put the handgun in a trash can, then drove to Connecticut with Thinh Dao. They drove to the house of a friend of the defendant, where the defendant told the friend he shot "two guys from Springfield." They stayed at that house that night. The gun never was recovered. The defendant threatened to kill Thinh Dao's family if he told anyone what happened.

The defendant's girl friend, who had been left behind in Springfield, arranged to meet him in West Hartford. Unbe-

---

[2]Thinh Dao was charged as a codefendant. He entered into a cooperation agreement with the Commonwealth and testified at the defendant's trial.

knownst to the defendant, she had agreed with the Springfield police to locate him. When the defendant and Thinh Dao arrived at the rendezvous, they were arrested. While he was confined in a cell at the West Hartford police station, the defendant ran several times headfirst into a cell wall, causing himself injuries that required hospitalization.

Tuan died of a gunshot wound to the head. Huan died of a gunshot would to the abdomen and the resulting loss of blood. The projectile entered his right side, below the rib cage, passed downward and across his body, perforated the vena cava, and lodged in his left pelvic bone.

At trial the defendant contended that he did not shoot the victims. He maintained that videotapes taken from a security camera that captured a portion of the activity just outside the club on the evening of the shooting, as well as photographic enlargements of frames of those videotapes, definitively exonerated him because it revealed the precise moment that Huan was shot, and the defendant is shown on the videotape with no weapon in his hand. Jason Coons, a security employee at the club, testified that he saw an unidentified man dressed in black standing near a stop sign just outside the club. The defense theory was that this person fired the fatal shots.

The defendant's girl friend testified that she had danced closely with the defendant inside the club, and that she did not feel any metal objects on his person. She identified the defendant, Thinh Dao, herself, and the other two friends in their group, as they appeared in the photographs from the security camera videotapes inside the club.

The defendant called a forensic pathologist who testified on cross-examination that Huan could have remained ambulatory for at least a few seconds after he was shot. He eventually would have collapsed due to a gradual drop in blood pressure, unless he had something to hold onto to keep him upright. The defendant also called a firearms expert who testified he was familiar with "muzzle flash" from a gun and how it appears on videotape. He further testified that he reviewed the videotape but did not see any muzzle flash.

The defendant's investigator testified to his interpretation of the videotape of the activity outside the club at the time of the

shooting. He identified various people based on items of cloth-
ing, hair color, and comparisons of information in their state-
ments to police with the activity depicted on the videotape. He
was unable to identify anyone by their faces because their faces
were not visible on the videotape. Although between ten and
twenty people were believed to be in front of the club at the
time of the shooting, only partial images of about five people
and a small portion of the melee were captured on the videotape.

2. *Required finding.* At the close of all the evidence the defen-
dant renewed his motion for required findings of not guilty. The
motion was denied. On appeal, he does not argue that the Com-
monwealth's proof, at the close of its evidence, was insufficient
to submit the case to the jury. Instead, he contends that the
judge erred by denying his renewed motion because the Com-
monwealth's case deteriorated as a result of the evidence he put
forth after the Commonwealth rested its case.

Deterioration occurs, for purposes of deciding whether to al-
low a motion for required finding of not guilty at the close of all
the evidence, if, after the defendant's case, the Commonwealth's
prima facie case has been shown to be "incredible or conclusively
incorrect," *Kater* v. *Commonwealth,* 421 Mass. 17, 20 (1995).
Deterioration does not occur simply because the defendant pre-
sented evidence that contradicted the Commonwealth's case.
*Commonwealth* v. *Walker,* 401 Mass. 338, 343-344 (1987). In
support of deterioration the defendant argues that the videotapes
of the fight outside the club demonstrate definitively that the
defendant did not shoot Huan: the defendant was shown not to
have a gun in his hand, and there was no evidence of muzzle
flash in any of the frames when Huan allegedly was shot. See
*Commonwealth* v. *Vaughn,* 23 Mass. App. Ct. 40, 42-43 (1986)
(despite eyewitness testimony, photographic evidence shows
defendant could not have been perpetrator).

The videotape images were blurry, of poor quality, and re-
quired an interpretation by the defendant's investigator. The
reliability of the investigator's work, and whether he accurately
identified persons shown in the videotape, which was based in
part on out-of-court witness statements, was a question for the
jury to resolve. The jury were not required to accept his testimony,
and in any event, they had the videotape and photographic

evidence to review in their deliberations and could judge for themselves what was seen on the videotape. Where the defendant's case depended on the credibility of his witnesses, it did not definitively establish the defendant's innocence. Consequently, there was no deterioration. See *Commonwealth* v. *Platt*, 440 Mass. 396, 404 (2003). There was no error in the denial of the defendant's motion for required findings of not guilty at the conclusion of all the evidence.

3. *Motion for a new trial.* The defendant argues that where his motion for a new trial "reliably demonstrates that [he] did not shoot either of the two victims," the judge erroneously denied the motion. He places great emphasis on several events that he contends are captured on the photographic enlargements of the videotape frames, all of which were exhibits at trial. He also relies on the detailed affidavit of his investigator, who testified at trial in a less detailed manner than presented in his affidavit.

The problem confronting the defendant is that the photographs alone do not establish when Huan was shot. The defendant's argument depends on the affidavit of his investigator, who relied on selected portions of the testimony at trial, and rejected or ignored other portions. He did precisely what the jury could have done, although he reached the opposite conclusion. For example, Den Dang testified that he pushed a female friend to the ground on hearing the first gunshot, then he, too, lay on the ground until some time after the second shot was fired. He later saw Huan lying near the driveway. The investigator's affidavit identifies Den Dang and his female friend in exhibits no. 49 through no. 54 standing in the area where Huan fell to the ground. He contends that this series of photographs, in conjunction with Dang's testimony, identifies the precise moment when Huan was shot, shown in exhibits no. 58 and no. 59; and the defendant, also seen in this series of photographs, has no gun in his hand. However, although the person identified as his female friend is on the ground, the person identified as Dang is standing at all times in these photographs. The defendant argues in his brief that Dang was wrong when he claimed to have been lying on the ground. But he relies on Dang's testimony that he pushed his friend to the ground after the first shot as support for his conclusion that Dang and his friend are the people in the photographs. This is important because

the second shot, the one that struck Huan, allegedly occurred immediately after Dang's friend was pushed to the ground.

It is by no means certain that Dang and his friend are the persons identified by the investigator. The quality of the photographs is poor, Dang never was asked at trial to identify himself and his friend in the photographs, the investigator never identified them in the photographs at trial, and it is not clear that the person identified as Dang protectively pushed the other person, identified as his female friend, to the ground: the person identified as Dang could just as easily be some third person who is deflecting a punch from someone else.

Even if Dang and his friend are correctly identified, the circumstances concerning the shooting, about which Dang testified, could have occurred before the portion of the melee shown in the photographs. There was testimony that Huan was near Tuan when he was shot, and the defendant's pathologist testified that Huan could have remained ambulatory for a few seconds after he was shot. The jury could have concluded from such evidence that Huan and Tuan were shot in the vicinity of the club's front window, and Huan became engaged in a fight with the defendant shortly thereafter in the location where he eventually collapsed. All of this could have occurred within a few seconds before the portion of the melee captured on videotape took place.

The evidence does not refute the Commonwealth's theory of the case or demonstrate that the defendant could not have shot Huan and Tuan, which is essentially what he argued at trial and is the theory advanced in his motion for a new trial. This theory depends entirely on speculation that Huan was shot at the point in time captured somewhere between photographic exhibits no. 58 and no. 59. The defendant has failed to establish this essential premise. It is not enough to argue its existence based on selected pieces of evidence that ignore other conflicting evidence, and an interpretation of the evidence that the jury were at least as capable of performing.

The defendant's claim that Dung Kieu and Thinh Dao gave false testimony rests on a wholesale acceptance of his investigator's affidavit as definitively establishing the premise that the defendant did not shoot the victims. As discussed above, this was based on the investigator's reliance on selected portions of the

testimony, selected portions of the witness statements and police reports, witness interviews, and photographic enlargements of the videotape of only a portion (both visually and temporally) of the incident. The defendant has not shown that the testimony of these witnesses was false other than by presuming that it must be false because it is contradicted by the conclusions of his investigator. He has done nothing more than offer a differing view of what transpired.

We add that virtually every witness gave testimony that did not dovetail precisely with the testimony of other witnesses. That is not uncommon, especially in an event as chaotic as seen here. Nor is there a requirement that evidence interlock with precision. Significantly, testimony about where the defendant, Tuan, and Huan were positioned generally was consistent in placing them in front of the club's front window, a location that was not within the recording range of the outside video camera. The jury reasonably could conclude that what appears in the photographic enlargements of the videotape frames occurred after both shootings.

The decision of the motion judge, who was also the trial judge, is entitled to special deference. *Commonwealth* v. *Zagrodny*, 443 Mass. 93, 103 (2004). The defendant's motion for a new trial presented nothing new or substantial that required an evidentiary hearing. It essentially was a recapitulation of the defense at trial. The judge heard it before, and concluded that there was nothing new. He did not abuse his discretion by declining to conduct an evidentiary hearing. See *Commonwealth* v. *Goodreau*, 442 Mass. 341, 348 (2004).

4. *Review under G. L. c. 278, § 33E.* The defendant asks that we review the case broadly and determine that a miscarriage of justice has occurred. He insists that the photographic evidence definitively establishes his innocence. "[I]t is not enough, nor is it a proper discharge of our responsibility under § 33E, to base our decision solely on the fact that there was some evidence . . . to support the jury's conclusion . . . . If that were the sole test there would be no need or occasion for the exercise of the extraordinary powers vested in this court by § 33E. While those powers are to be exercised sparingly, they may, and perhaps must, be exercised when all other conventional tests and pro-

cedures have been exhausted but we are still left with a miscarriage which may result unless we exercise those powers to prevent it." *Commonwealth* v. *Gould,* 380 Mass. 672, 688 (1980) (Quirico, J., concurring in part and dissenting in part). Applying this test, we have examined the entire record, including the photographs, with the view urged by appellate counsel.

As we discussed above, the defendant's claim that the photographic evidence captures the precise moment that Huan was shot is flawed. The photographs themselves do not establish when Huan was shot. Huan could have been shot earlier, then collapsed seconds later while he was captured on videotape fighting with the defendant and others. There were two eyewitnesses who saw the defendant shoot Huan, one of whom also saw him shoot Tuan. The consciousness of guilt evidence is very strong: the defendant fled, nearly causing an accident, and he left three young friends, including his girl friend, behind with no means of returning to Connecticut. The defendant had a motive to injure Tuan, whom he thought purposely bumped into him the week before, and he tried to provoke a fight with Tuan immediately before the shooting. The defendant kept reaching into his coat during the argument, as if readying to pull out a gun. We are satisfied that the jury's verdicts are not a miscarriage of justice.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*