## Commonwealth vs. Frederick Patton.

Bristol. April 5, 2010. - September 28, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Practice, Criminal,* Probation, Revocation of probation, Assistance of counsel, New trial, Hearsay. *Constitutional Law,* Assistance of counsel. *Due Process of Law,* Assistance of counsel. *Evidence,* Videotape, Hearsay.

This court concluded that under constitutional principles of due process and under Rule 5 (a) of the District Court Rules for Probation Violation Proceedings, the probationer was entitled to appointed counsel at his probation revocation hearing, where the issues were complex and not capable of being presented or defended adequately by someone untrained in the law, and where the likelihood of imprisonment was high if it were determined that the probationer violated the terms and conditions of his probation by committing an indecent assault and battery on a child under fourteen [124-126]; further, this court concluded that the probationer was entitled to effective assistance of counsel (whether appointed or retained), and that he properly presented his claim of ineffective assistance in a motion for a new trial under Mass. R. Crim. P. 30 (b) [126-130].

This court concluded that a probationer was not prejudiced by his counsel's failure to file a timely appeal from a District Court judge's decision to revoke probation, where, at the hearing on revocation, the evidence was sufficient to support a finding that the probationer violated the terms and conditions of his probation by committing an indecent assault and battery on a child under fourteen, and the Commonwealth's case did not deteriorate as a result of evidence that the child recanted [130-131]; where a videotaped sexual abuse intervention network interview with the child was admissible at the hearing under common-law rules of evidence as substantially reliable hearsay [131-134]; where the judge, who was well aware of the age and corresponding limitations of the child, implicitly satisfied herself that there was no reason to raise, sua sponte, the question of the child's competency [134-136]; and where the judge satisfied the requirement under Rule 6 of the District Court Rules for Probation Violation Proceedings for written findings [136].

Complaint received and sworn to in the New Bedford Division of the District Court Department on February 23, 2004.

A proceeding for revocation of probation was heard by *Bernadette L. Sabra,* J., and a motion for a new hearing, filed on November 21, 2008, was also heard by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Rebecca Rose* for the defendant.

*Kristen L. Spooner,* Assistant District Attorney (*David J. Gold,* Assistant District Attorney, with her) for the Commonwealth.

SPINA, J. Frederick Patton, the probationer, was sentenced to a term of incarceration as a result of the revocation of his probation in the District Court. Represented by new counsel on appeal, he filed a motion under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), alleging that trial counsel was ineffective for failing to file a notice of appeal, that the evidence at his revocation hearing was insufficient to support a finding that he violated the terms and conditions of his probation, and that in the circumstances his only avenue to obtain review is under rule 30. His motion was denied and he appeals. We transferred the case here on our own motion to consider whether a probationer is entitled to the effective assistance of counsel at a probation violation hearing, and if he is, to identify the appropriate procedure for presenting a claim of ineffective assistance of counsel.

We hold that a probationer is entitled to effective assistance of counsel at a probation violation hearing if his liberty is palpably at risk, or, alternatively, in all District Court cases. We further hold that a motion for a new trial under rule 30 (b) is the proper means to raise a claim of ineffective assistance of counsel at such a hearing. Finally, we conclude that the evidence was sufficient to support the finding that the probationer violated the terms and conditions of his probation, and we affirm the denial of his rule 30 (b) motion.

1. *Background.* On May 10, 2004, the probationer was convicted in the New Bedford Division of the District Court Department of assault by means of a dangerous weapon, aggravated assault and battery, and violation of an abuse prevention order. On the count alleging aggravated assault and battery he was sentenced to two years in the house of correction, four months to be served and the balance suspended, with probation until May 9, 2006. He received straight probation until May 9, 2006, on the other two counts. A condition of his probation was that he not violate any criminal law.

Following a hearing on June 16, 2005, based on circumstances not relevant to this appeal, he was found to be in violation of his probation by a second judge. Probation was revoked on the conviction of assault by means of a dangerous weapon, and a sentence of one year in the house of correction was imposed. Probation on the other two counts was extended until June 16, 2008. He was released after serving his sentence, and thereafter continued with his probation.

On May 9, 2007, the probationer received a notice of probation detention hearing alleging that he had violated the conditions of his probation by committing the crimes of indecent assault and battery on a child under fourteen, and threatening to commit a crime, on or about April 23, 2007, in the Dorchester section of Boston. Counsel was appointed to represent him. A probation violation hearing was held before a third judge. That hearing is the subject of this appeal.

The evidence at the hearing consisted primarily of written witness statements in police reports, and a videotaped Sexual Abuse Intervention Network (SAIN)[1] interview with the four year old victim.[2] The judge could have found the following facts. The child in question was four years old at the time of the incident. The child and her mother stayed at the home of the paternal grandmother over the weekend of April 21-23, 2007. The probationer is the grandmother's husband, but not the child's grandfather. During the early morning hours of April 23, the child climbed into her grandmother's bed, between the probationer and her grandmother. The probationer reached under her underwear and touched her "coo coo" (her vaginal area). He said he would beat her up if she told anyone. The child attempted

---

[1] A Sexual Abuse Intervention Network (SAIN) interview "represents an effort to reduce the burden on a young abuse complainant. When a SAIN interview is conducted, members of several different agencies may be present. Normally, representatives of one or more agencies interview the child, while the representatives of other agencies watch from behind a mirrored window." *Commonwealth* v. *Lam*, 444 Mass. 224, 227 n.4 (2005). Here, the interview was conducted by a forensic child interviewer. An assistant district attorney, a victim witness advocate, a Department of Social Services investigator, and a Boston police detective observed the interview through a one-way mirrored window in an adjoining room.

[2] The SAIN interview was conducted and videotaped on April 27, 2007. The videotape was marked as an exhibit and viewed by the judge.

to tell her parents immediately after the incident, but her father, who also lived in the house, told her it was late and to go back to bed. During the evening of April 23, the child complained to her mother that her private area hurt. She disclosed what the probationer had done to her. The child's mother observed a clear liquid on the child's vaginal area. The parents immediately notified police and sought immediate medical attention.

The probationer gave a statement to police on May 1, 2007, in which he denied touching the child, but he admitted that the child slept in the bed with him and his wife on the night in question.[3] He also said that he and the child got along very well and he could not say why she would accuse him of sexually assaulting her.

The main thrust of the defense was that the child had recanted. Evidence of recantation consisted of written statements from the child's mother and father, and live testimony of the probationer's private investigator, who had spoken to the child in the presence of the child's mother. The child reportedly told her father she lied about the incident because the probationer refused to give her ice cream. She reportedly told her mother and the private investigator she lied about the incident to put an end to her mother's persistent questioning concerning whether anyone had touched her. The judge did not find the evidence of recantation credible.

On October 11, 2007, the probationer was found to be in violation of his probation based on an indecent assault and battery on the child. His probation was revoked, and he was ordered to serve the balance of his sentence (twenty months) on the count alleging aggravated assault and battery. In addition, he received a concurrent sentence of two years in a house of correction on the count alleging violation of an abuse prevention order.

On January 3, 2008, the complaint alleging indecent assault and battery on a child under fourteen, the circumstances on which

---

[3]The probationer told police on May 1, 2007, that his wife did not get any sleep during the night of April 22-23, implying that she could vouch for his innocence. His wife had spoken to police on April 23, and she did not mention that she had been awake all night such that she would have known if the probationer had done as the child said. She told police that on three occasions during the previous three weeks the child had told her that two cousins, ages four and seven, had touched "her tootoo."

the probationer's violation of probation was based, was nolle prossed in the Dorchester Division of the Boston Municipal Court. As reasons for the nolle prosequi, the prosecutor stated that "the parents of the minor victim report that the minor victim has recanted." He further stated, "The parents of the minor victim have also denied the Commonwealth access to the minor child. Without speaking with the minor child, the Commonwealth is unable to assess the viability of the case for prosecution and therefore cannot proceed to trial."

On February 11, 2008, defense counsel filed a motion to reconsider the sentence imposed on the ground that "the basis of the Commonwealth's surrender has been vitiated" by the nolle prosequi. The motion was denied, after hearing, on February 29, 2008. On March 7, 2008, counsel filed a notice of appeal. The record was assembled and sent to the Appeals Court. In the meantime, new counsel was appointed by the Committee for Public Counsel Services to represent the probationer in his appeal. She filed her appearance on May 20, 2008. Appellate counsel filed a motion to dismiss the appeal as untimely. The Appeals Court allowed the motion and the appeal was dismissed "with prejudice," on or before November 21, 2008.

On November 21, 2008, appellate counsel filed a motion for a new hearing pursuant to rule 30 (b), on grounds that justice was not done. In particular, the probationer alleged that counsel was ineffective because he failed to file a timely notice of appeal, and failed to file a timely motion for reconsideration,[4] thereby leaving a rule 30 (b) motion as the sole avenue to challenge the finding of a violation of probation and the revocation of his probation.[5] The motion for a new hearing further alleged

---

[4]Because the judge considered the merits of the probationer's motion for a new hearing she implicitly accepted trial counsel's assertion in his affidavit that although the probationer wanted to challenge the revocation order, counsel did not discuss with him an appeal to the Appeals Court. Instead, counsel determined there were no viable issues for appeal, and he decided unilaterally not to file a notice of appeal. There is no dispute about these facts on appeal.

[5]Appellate counsel asserts, and the Commonwealth does not dispute, that by the time she was appointed and appropriate transcripts were prepared, one year had passed since sentence was imposed on the revocation of probation, and she could not file a motion pursuant to Mass. R. A. P. 14 (b), as amended, 378 Mass. 939 (1979), to extend the time for filing a notice of appeal. See *Commonwealth* v. *White*, 429 Mass. 258, 262-264 (1999).

that the evidence presented at the hearing was insufficient to find by a preponderance of the evidence that the probationer committed an indecent assault and battery on a child under fourteen. After hearing, the motion was denied[6] and the probationer timely appealed.

2. *Assistance of counsel.* The Commonwealth argues that this appeal is not properly before us. It contends that the only avenues to obtain review of a finding of a violation of probation and an order revoking probation are a timely appeal from the imposition of sentence or a timely motion to reconsider the order.[7] See *Commonwealth* v. *Hernandez*, 441 Mass. 1014, 1014-1015 (2004). The Commonwealth acknowledges, however, that we previously have not considered the issue in the context of a claim of ineffective assistance of counsel.

A criminal defendant is entitled, under the Sixth Amendment to the United States Constitution, to the effective assistance of counsel in a criminal case. *McMann* v. *Richardson*, 397 U.S. 759, 771 n.14 (1970). A claim of ineffective assistance of counsel is a well-established ground for a collateral attack on a decision in a criminal case. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624 n.3 (1994). Such a claim is not a basis for a collateral attack on a civil judgment, where a litigant's sole recourse for his attorney's negligence is an action for malpractice. See *Bell* v. *Eastman Kodak Co.*, 214 F.3d 798, 802 (7th Cir. 2000). As a general rule, there is no right to the effective assistance of counsel in civil cases. See, e.g., *Pokuta* v. *Trans World Airlines, Inc.*, 191 F.3d 834, 840 (7th Cir. 1999), and cases cited. There are exceptions to the rule that we will discuss.

A probation violation proceeding is considered not to be a criminal prosecution because the probationer already has been convicted of a crime at a trial, and sentenced. See *Gagnon* v.

---

[6]The judge found, "There was solid evidence including . . . the video of the SAIN interview with the minor child such that the court heard and assessed the child's allegations and found them believable, uncoerced, and the questions were not leading. Thus there was reliable hearsay evidence to support a finding of a preponderance of the evidence for a violation to be found."

[7]A motion to reconsider must be filed within thirty days of the order from which an appeal is sought. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 294 (1991). Here, it was not timely filed because, according to the probationer, his counsel was ineffective.

*Scarpelli*, 411 U.S. 778, 781 (1973). However, due process rights under the Fourteenth Amendment to the United States Constitution are implicated at such a hearing because a finding of violation of probation may result in loss of liberty. *Id.* Where "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special [conditions]," *id.*, quoting *Morrissey* v. *Brewer*, 408 U.S. 471, 480 (1972) (parolee facing revocation of parole entitled to limited measure of due process), "a probationer need not be provided with the full panoply of constitutional protections applicable at a criminal trial." *Commonwealth* v. *Durling*, 407 Mass. 108, 112 (1990), citing *Gagnon* v. *Scarpelli, supra* at 782. The Court in *Gagnon* determined that there was no appreciable distinction between the interests of a probationer and a parolee at a revocation hearing, and it applied the same due process standards required in parole revocation proceedings to probation revocation proceedings. *Gagnon* v. *Scarpelli, supra* at 782 & n.3.

The Court in *Gagnon* went on to address the question whether due process required the appointment of counsel in probation violation hearings. It concluded that counsel need not be appointed in every case, and that the matter should be decided on a case-by-case basis. *Id.* at 787-788. It held that a probationer should be advised that he may request counsel, and if a timely request is made and the probationer makes a colorable claim that he has not committed the alleged violation, or, even if he does not contest the violation but offers substantial reasons that stand in mitigation of revocation and make revocation inappropriate, and if the issues are too complex for the probationer to handle alone, then counsel presumptively should be appointed. *Id.* at 788-790.

We have taken a somewhat more expansive view than the Supreme Court and held that whenever imprisonment palpably may result from a violation of probation, "simple justice" requires that, absent waiver, a probationer is entitled to assistance of counsel. *Williams* v. *Commonwealth*, 350 Mass. 732, 737 (1966). See *Commonwealth* v. *Faulkner*, 418 Mass. 352, 359-360 (1994). The probationer is not required to make any other showing under our jurisprudence.

In addition, Rule 5 (a) of the District Court Rules for Proba-
tion Violation Proceedings 793 (LexisNexis 2008-2009) states:
"The probationer shall be entitled to the assistance of counsel,
including the appointment of counsel for probationers determined
by the court to be indigent." The Commentary to rule 5 (a)
acknowledges that "the rule goes beyond current law by provid-
ing the right to counsel regardless of whether the probationer
faces the possibility of imprisonment if probation is revoked."
*Id.* at 795.

There is no doubt that here, the issues at the probation viola-
tion hearing were complex and not capable of being presented
or defended adequately by someone untrained in the law. The
likelihood of imprisonment was high if it were determined that
the probationer violated the terms and conditions of his proba-
tion by committing an indecent assault and battery on a child
under fourteen. We conclude that the probationer was entitled to
appointed counsel under constitutional principles of due process
and under rule 5 (a). The next point in our analysis is whether
the right to appointed counsel includes the right to effective as-
sistance of counsel.

In criminal cases the right to assistance of counsel under the
Sixth Amendment includes the right to appointed counsel if the
probationer is indigent. *Gideon* v. *Wainwright*, 372 U.S. 335
(1963). The right to counsel under the Sixth Amendment is
recognized to be the right to effective assistance of counsel.
*McMann* v. *Richardson*, 397 U.S. 759, 771 n.14 (1970), and
cases cited. The right to effective assistance of counsel applies
to retained counsel as well as appointed or assigned counsel.
*Cuyler* v. *Sullivan*, 446 U.S. 335, 344-345 (1980).

Our courts have considered the question of effective assistance
of counsel in the context of civil cases, and looked to criminal
cases for guidance. In *Care & Protection of Stephen*, 401 Mass.
144, 149 (1987), this court reasoned that "[t]he right to counsel
is of little value unless there is an expectation that counsel's as-
sistance will be effective," and held that parents, who have an
express statutory right to counsel in care and protection proceed-
ings, are entitled to the effective assistance of counsel.[8] See

---

[8]In *Lassiter* v. *Department of Social Servs. of Durham County*, 452 U.S. 18,
25 (1981) (*Lassiter*), the Supreme Court said that it is a person's "interest in

G. L. c. 119, § 29. See also *State* v. *Anonymous*, 179 Conn. 155, 160 (1979) (termination of parental rights case where court said, "Where . . . a statute . . . mandates the assistance of counsel, it is implied that this means competent counsel"). The criminal law provided further guidance for the court's conclusion that the appropriate standard for judging claims of ineffective assistance of counsel in care and protection proceedings is the standard set forth in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).[9] See *Care & Protection of Stephen, supra.* Finally, the court stated that the preferred method for presenting such a claim is by motion for a new trial. *Id.* at 150. In *Adoption of Mary*, 414 Mass. 705, 712-713 (1993), the court indicated that the same rule and the same procedure should apply in proceedings pursuant to G. L. c. 210, § 3, to dispense with parental consent for adoption.

In *Commonwealth* v. *Griffin*, 404 Mass. 372, 374-375 (1989), this court applied the reasoning of *Care & Protection of Stephen, supra*, and held that the statutory right to consult with counsel

personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, which triggers the right to appointed counsel." The Court acknowledged that termination of a parent-child relationship was so significant a deprivation as to require appointment of counsel for indigent parents in some parental rights termination cases. *Id.* at 27-31. The Court held that the question of appointment of counsel should be determined on a case-by-case basis by applying the standard articulated in *Gagnon* v. *Scarpelli*, 411 U.S. 778, 790 (1973). See *Lassiter, supra* at 31-32. The following term, the Supreme Court recognized that natural parents had a "fundamental liberty interest . . . in the care, custody, and management of their child." *Santosky* v. *Kramer*, 455 U.S. 745, 753 (1982).

Two years before *Lassiter* was decided, this court held that parents have a fundamental liberty interest in their relationship with their children that entitles them to appointed counsel, if indigent, before their parental rights can be terminated consistent with principles of due process under art. 10 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Constitution. See *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3-4 (1979). Parents are not required to make any other showing under our jurisprudence.

[9]*Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), set forth a two-part inquiry to determine claims of ineffective assistance of counsel: first, "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence."

under G. L. c. 277, § 14A, included the right to effective assistance of counsel.

The Appeals Court applied similar reasoning to a claim of ineffective assistance of counsel in a sexually dangerous person proceeding under G. L. c. 123A,[10] where the right to counsel was set forth in the statute. The court further stated that the preferred means to raise such a claim is by motion for a new trial. See *Commonwealth* v. *Ferreira*, 67 Mass. App. Ct. 109, 114-115 (2006) (court added in dicta that State and Federal constitutional requirements of due process would require same result). But see *Commonwealth* v. *Sargent*, 449 Mass. 576, 585-586 (2007) (applying, but not deciding, whether *Saferian* standard applies to proceedings under G. L. c. 123A).

Recently, in *Poe* v. *Sex Offender Registry Bd.*, 456 Mass. 801, 811-814 (2010) (*Poe*), we held that the statutory right to counsel at classification hearings before the Sex Offender Registry Board (board) includes the right to effective assistance of counsel, and that the civil formulation of the *Saferian* standard governs claims of ineffective assistance of counsel. We observed, "At stake in a classification hearing is the sex offender's 'constitutionally protected liberty and privacy interest in avoiding registration and public dissemination of registration information.' . . . Classification and registration entail possible harm to a sex offender's earning capacity, damage to his reputation, and, 'most important, . . . the statutory branding of him as a public danger.' " *Poe, supra* at 813, quoting *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.* v. *Attorney Gen.*, 426 Mass. 136, 144 (1997).

The principle that emerges from these cases is that in a proceeding that involves a person's liberty or a fundamental liberty interest, in which a person has a right to appointed counsel, from whatever source, the person is entitled to the effective assistance of counsel whether counsel is appointed or retained. In addition, the outcome of that proceeding may, but need not, be attacked collaterally through a claim of ineffective assistance of counsel in a motion for a new trial. Finally, such a claim generally will be reviewed under the *Saferian* standard.

---

[10]A person found to be sexually dangerous may be deprived of his liberty for the remainder of his life. See G. L. c. 123A, § 14 (*d*).

Although the rules of criminal procedure do not apply to probation violation proceedings, questions of ineffective assistance of counsel involving those proceedings may most appropriately be raised in a motion for a new trial under rule 30 (b). But see *Commonwealth* v. *Trussell*, 68 Mass. App. Ct. 452, 457-460 (2007). It is the rule used in criminal proceedings for such purposes, and brings the benefit of familiarity. Cf. *Poe* v. *Sex Offender Registry Bd.*, *supra* at 814, quoting *Loe* v. *Sex Offender Registry Bd.*, 73 Mass. App. Ct. 673, 686 (2009) (Sikora, J., concurring) (as to application of *Saferian* standard to proceedings before board).

In this case the probationer specifically asked his counsel to challenge the result of his probation violation hearing. Counsel did not do so and, for no reason apparent on the record, failed to file a timely notice of appeal. We are satisfied on this record that the probationer has proved a claim of ineffective assistance of counsel, and that it has been presented in the proper manner in a motion for a new trial under rule 30 (b). The failure of trial counsel to file a timely notice of appeal when specifically instructed by his client to do so deprived the probationer of an appeal to which he was entitled. This constitutes ineffective assistance of counsel. See *Commonwealth* v. *Trussell*, *supra* at 452, 457-458 & n.5. Where a probationer has been deprived of his right to a direct appeal due to the ineffective assistance of counsel, he must either be retried or his appeal must be reinstated. See *Commonwealth* v. *Cowie*, 404 Mass. 119, 122 (1989), citing *Evitts* v. *Lucey*, 469 U.S. 387, 391-392, 396-397 (1985). See also *Commonwealth* v. *Goewey*, 452 Mass. 399, 402-405 (2008).

The Supreme Court has said that a State may, in these circumstances, insist on adherence to its appellate rules of procedure in the interest of orderly presentation of appeals, provided it does not extinguish altogether a defendant's right of appeal. To the extent a defendant's right to appeal has been extinguished because of counsel's ineffectiveness, as here, the State may provide some alternative procedure. See *Evitts* v. *Lucey*, *supra* at 399-400. We have provided such an alternative in the context of a direct criminal appeal that has been lost because of counsel's ineffectiveness, through a motion under rule 30 (b). See *Commonwealth* v. *Cowie*, *supra* at 122-123. The same reasoning and result should apply in the context of a lost right of appeal from

a revocation of probation due to counsel's ineffectiveness in failing to file a timely notice of appeal.

Under rule 30 (b), a probationer must first show that counsel's failure to file a timely notice of appeal deprived him of a right of appeal to which he would have been entitled and that he intended to pursue; second, he must show that he was prejudiced thereby. See *Poe, supra* at 813.

The probationer followed this course by filing a motion under rule 30 (b). There is no dispute that trial counsel unilaterally decided not to file a notice of appeal and that the probationer wanted to challenge the revocation of his probation. See note 4, *supra.* The judge denied the probationer's motion because she concluded that the motion failed to establish that the probationer had been prejudiced. See note 5, *supra.* The denial of the probationer's motion for a new trial is properly before us. See Mass. R. Crim. P. 30 (c) (8), as appearing in 435 Mass. 1501 (2001). We must review that decision and decide if the probationer was prejudiced by counsel's failure to file a timely appeal. See *Commonwealth* v. *Goewey, supra.*

3. *Sufficiency of the evidence.* The probationer argues that the evidence at his revocation hearing was insufficient to support a finding by a preponderance of the evidence that he violated his probation by committing an indecent assault and battery on a child under fourteen. See *Commonwealth* v. *Holmgren,* 421 Mass. 224, 226 (1995), and cases cited. There was evidence which, if believed, established that the probationer reached under the four year old child's underwear and touched her vaginal area. This evidence is sufficient to establish a violation of probation by reason of an indecent assault and battery on a child under fourteen. See *Commonwealth* v. *Lawrence,* 68 Mass. App. Ct. 103, 104 (2007). See also *Commonwealth* v. *Mosby,* 30 Mass. App. Ct. 181, 184 (1991) (intentional, unjustified touching of pubic area constitutes indecent assault and battery).

The probationer next contends that the evidence of sexual abuse "eroded" because the child recanted. Properly presented, the question is whether the Commonwealth's case had "deteriorated" by the close of all the evidence such that, as a matter of law, the probationer was entitled to a finding of no violation of probation. See *Commonwealth* v. *Nhut Huynh,* 452 Mass. 481,

485 (2008). It is not a question of admissibility of evidence, as the probationer suggests, but of the sufficiency of the evidence. "Deterioration would occur not because [the probationer] contradicted the Commonwealth's evidence (*Commonwealth* v. *Walker*, 401 Mass. 338, 343-344 [1987]), but because evidence for the Commonwealth necessary to warrant submission of the case to the jury is later shown to be incredible or conclusively incorrect." *Kater* v. *Commonwealth*, 421 Mass. 17, 20 (1995), and cases cited.

The only evidence of an indecent assault and battery on a child under fourteen consisted of the videotaped SAIN interview with the four year old child. The child did not testify. As previously discussed, the evidence of recantation consisted of written statements from the child's mother and father, and testimony of the probationer's private investigator, who spoke to the child. The child reportedly told her father she lied about the incident because the probationer refused to give her ice cream. She reportedly told her mother and the private investigator she lied to put an end to her mother's persistent questioning concerning whether anyone had touched her. There is nothing about this evidence that renders the Commonwealth's case incredible or conclusively incorrect.

It was a matter for the judge to decide how much weight to give the evidence of recantation. The judge weighed the evidence and concluded, stating on the record, that the recantation evidence was less worthy of belief than the videotaped SAIN interview with the child because there was no indication "how [the child] was spoken to or how she was interviewed" by her parents or the investigator. The judge reasoned that because the recantation interviews were not videotaped, she could not assess their trustworthiness and reliability as well as she could the videotaped SAIN interview. After weighing the evidence the judge determined that the Commonwealth sustained its burden of proving, by a preponderance of the evidence, that the probationer violated his probation. There was no error. The Commonwealth's case did not deteriorate as a result of the recantation evidence.

4. *Evidentiary issues.* The probationer argues that the videotaped SAIN interview with the child did not meet the require-

ments for admissibility under G. L. c. 233, § 81. Alternatively, he argues that the videotape of the SAIN interview, which was the only evidence of an indecent assault and battery, did not possess the "substantial indicia of reliability" required for admissibility of hearsay that is the only evidence of the violation of probation. See *Commonwealth* v. *Durling*, 407 Mass. 108, 118 (1990).

In *Commonwealth* v. *Durling, supra* at 118-119, this court said, "If the Commonwealth has 'good cause' for not using [at a probation violation hearing] a witness with personal knowledge, and instead offers reliable hearsay or other evidence, then the requirements of due process are satisfied." Hearsay is "presumptively reliable" if admissible under "standard evidentiary rules." *Id.* at 118. If hearsay is not admissible under standard evidentiary rules, it nevertheless may be admissible if the judge makes a determination that it is reliable. *Id.* If the hearsay is the only evidence of the violation, as here, it must be *substantially* reliable. *Id.*

Rule 6 of the District Court Rules for Probation Violation Proceedings 798 (LexisNexis 2008-2009) states:

> "(a) *Admissibility of Hearsay Evidence.* Hearsay evidence shall be admissible at probation violation hearings.

> "(b) *Sufficiency of Evidence When Case Rests Solely on Hearsay.* Where the sole evidence submitted to prove a violation of probation is hearsay, that evidence shall be sufficient only if the court finds in writing (1) that such evidence is substantially trustworthy and demonstrably reliable and (2), if the alleged violation is charged or uncharged criminal behavior, that the probation officer has good cause for proceeding without a witness with personal knowledge of the evidence presented."

The Commentary to rule 6, *id.* at 800, identifies "at least five criteria" to be considered on the question of trustworthiness and reliability:

> (1) the level of factual detail, rather than generalized and conclusory assertions;

(2) whether the statement is based on personal knowledge and direct observation;

(3) whether the statement is corroborated by evidence submitted by the probationer;

(4) whether the statement was provided under circumstances that support the veracity of the source; and

(5) whether the statement was provided by a disinterested witness.

These criteria, by the terms of the Commentary, see *id.* at 800-801, are nonexclusive, and are derived from *Commonwealth v. Durling, supra,* and *Commonwealth* v. *Delaney,* 36 Mass. App. Ct. 930, 932 n.4 (1994). There is no requirement that hearsay satisfy all the above criteria to be trustworthy and reliable.

The probationer first argues that the videotape of the SAIN interview should not have been admitted because the child did not testify and the videotape did not meet the requirements of G. L. c. 233, § 81.[11] We need not dwell on this point or decide whether a probation violation hearing is a "criminal proceeding" within the meaning for § 81, because the statute is not the exclusive basis of admissibility of the videotape of the SAIN interview. The probationer's reliance on *Commonwealth* v. *Joubert,* 38 Mass. App. Ct. 943, 945 (1995), is misplaced. In that case the court did not hold that § 81 must be satisfied in probation violation proceedings. The court considered § 81 as one way to establish the admissibility of hearsay under *Commonwealth* v. *Durling, supra* at 118. In *Durling,* this court created a common-law rule that permits the admission of reliable hearsay in probation violation hearings, or substantially reliable hearsay where the hearsay is the only evidence of the alleged violation. *Id.* We next discuss the substantial reliability of the videotape of the SAIN interview.

---

[11]General Laws c. 233, § 81, states: "(*a*) An out-of-court statement of a child under the age of ten describing an act of sexual contact performed on or with the child, the circumstances under which it occurred, or which identifies the perpetrator shall be admissible as substantive evidence in any criminal proceeding." The statute sets forth requirements for admissibility, and further states: "(*d*) An out-of-court statement which is admissible by common law or by statute shall remain admissible notwithstanding the provisions of this section."

The probationer argues that the videotape of the SAIN interview should not have been admitted because it constituted hearsay that was not admissible under standard evidentiary rules, that it was the only evidence of the probation violation, and that it was not substantially reliable. We agree with the first two points, but not the third. The videotaped SAIN interview met four of the five criteria in the commentary to rule 6. It was substantially trustworthy and reliable, and therefore admissible under the common-law rule of *Durling*. It contained specific factual details[12] of what occurred and was neither general nor conclusory. The videotaped statement was based on the child's personal knowledge, and she had repeated its details with consistency several times over four days. The statement was corroborated, in part, by the probationer's own statement that the child slept with him and his wife on the night in question. The statement was made in circumstances that support the child's credibility, including (1) the promptness of the child's complaint, (2) her repetition of the details at least three times over four days, (3) the fact that the SAIN interview was conducted by a forensic child interviewer, and (4) the minimal number of leading questions during the SAIN interview, which suggests the details were provided by the child and not the result of any coaching. Finally, the judge viewed the videotape of the SAIN interview and observed the child's demeanor. A videotape possesses "certain special characteristics," including the precise words used by the child and display of the child's demeanor as she related what happened, adding to its reliability. *Commonwealth* v. *Cates*, 57 Mass. App. Ct. 759, 762-763 (2003). We have viewed the videotape and we are satisfied that the judge correctly determined that the videotape of the SAIN interview was substantially reliable hearsay evidence.

As part of his argument under G. L. c. 233, § 81, the probationer contended that the child was not competent to testify. Generally, a challenge to a witness's competency should be determined before the witness testifies. See *Commonwealth* v.

---

[12]The child drew a picture during the SAIN interview placing herself between the probationer and her grandmother. Unprompted, she directed the SAIN interviewer to draw the bedcovers and to depict her eyes being closed. The child's pursuit of precision in detail underscores an appreciation of the need for accuracy.

*Domanski*, 332 Mass. 66, 73-74 (1954); *Commonwealth* v. *Sylvia*, 35 Mass. App. Ct. 310, 312 (1993). In the absence of an objection or motion to strike the admission of the videotape, see *Commonwealth* v. *Whitehead*, 379 Mass. 640, 656 (1980), the issue is waived. See *Commonwealth* v. *Lamontagne*, 42 Mass. App. Ct. 213, 216-217 (1997). The judge may consider the issue sua sponte, see *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 331 (1986), but there is no requirement that she do so. *Commonwealth* v. *Lamontagne, supra.* Here, of course, the child did not testify, but the issue remained viable, at least as it related to the question of the reliability of the hearsay.

The child was not per se incompetent by reason of her age. We have affirmed findings of four year old children's competency. See *Commonwealth* v. *Dockham*, 405 Mass. 618, 624 (1989). See also *Commonwealth* v. *Lamontagne, supra* at 216. The judge had the opportunity to observe the child on the videotape recording. See *Commonwealth* v. *Whitehead, supra.* There was evidence that the child understood that she could receive a spanking if she told a lie. The child was able to describe her experience in detail, and she repeated the detail several times with consistency. She demonstrated sufficient cognitive and communication skills and memory. Based on this record, there was sufficient evidence to conclude that the child was competent. See *Commonwealth* v. *Brusgulis, supra*; *Commonwealth* v. *Lamontagne, supra* at 217-219. See also Mass. G. Evid. § 601(b) (2010).[13]

We conclude the judge, who was well aware of the age and corresponding limitations of the child,[14] implicitly satisfied

---

[13]Section 601(b) of the Massachusetts Guide to Evidence 169 (2010) states:

"A person is competent to be a witness if he or she has:

"(1) the general ability or capacity to observe, remember, and give expression to that which he or she has seen, heard, or experienced, and

"(2) an understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter, and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment."

[14]At one point, the judge indicated she was listening to see whether the child "used words that were beyond her years."

herself that there was no reason to raise, sua sponte, the question of the child's competency. We have reviewed what is primarily a documentary case, and we are satisfied that there was no reason to question, sua sponte, the child's competency. Moreover, as judge of the credibility of the child's statement, the judge would have revisited the question of the age and competency of the child, which she did. She concluded that the child's videotaped statement was believable.

Finally, the judge satisfied the requirement under rule 6 (b) for written findings in this case by creating a composite that consisted of the dictation into the record of her findings on the question of trustworthiness and reliability of the hearsay evidence, the transcription of those findings, and her notes on the probation violation finding and disposition form. See *Commonwealth* v. *King*, 71 Mass. App. Ct. 737, 739-740 n.5 (2008). See also *Gagnon* v. *Scarpelli*, 411 U.S. 778, 786 (1973), quoting *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972) (probationer entitled to "written statement by the factfinders as to the evidence relied on and reasons for revoking [probation]"). The judge similarly satisfied the requirement of rule 6 (b) for written findings as to the existence of good cause to proceed without the child's live testimony, based on the prosecutor's representation that the child would be called to testify at trial. See *Commonwealth* v. *Durling*, *supra* at 117 n.4 ("A more compelling example [of good cause for not calling a witness] is in a rape case. Often the only witness with personal knowledge of the crime is the victim. The trauma of testifying at probable cause hearings, before the grand jury, and at trial is onerous enough for such a victim. Society has an interest in not adding probation revocation hearings to that list"). Both rulings were correct.

5. *Conclusion.* For the foregoing reasons, we conclude that the finding of a violation of probation was based on sufficient evidence that, while hearsay, was substantially reliable. The order denying the probationer's motion for a new hearing is affirmed.

*So ordered.*