NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-913

COMMONWEALTH

vs.

TIA CORRY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, Tia Corry, was convicted of assault and battery.[1] On appeal, the defendant argues that the Commonwealth failed to present sufficient evidence to show that the assault and battery occurred, and that the prosecutor's misstatements during direct examination of a witness and closing argument created a substantial risk of a miscarriage of justice. We affirm.

Background. The jury could have found the following facts.

---

[1] Prior to the presentation of evidence, the judge dismissed for lack of prosecution a count alleging assault and battery against a different victim. The defendant successfully moved for required findings of not guilty on charges of trespass, disorderly conduct, resisting arrest, and disturbing the peace.

1.  The Commonwealth's case.  On July 31, 2019, at approximately 3 P.M., the defendant arrived at the emergency room at Brockton Hospital with complaints of chest pain, nausea, and vomiting.  While receiving treatment, she suffered two brief seizures and was admitted to the hospital's critical care unit for further monitoring.  Throughout her stay in both the emergency room and the critical care unit, the defendant received a series of medications to alleviate her symptoms, including Ativan, morphine, fentanyl, and hydromorphone.[2]

The next day, at around 7:30 P.M., the defendant's heart rate rose to above 180 beats per minute, triggering an alarm at the nurse's station.  A nurse working in the critical care unit, responded to the alarm and approached the defendant's hospital room.  When the nurse entered the room, he asked if the defendant was "okay" and directed her to get back into bed.  According to the nurse, the defendant then shouted, "get the fuck out of my room," pushed the nurse (hereinafter, victim) in the chest with both hands, and slammed the door to the room

---

[2] While it may be concerning that this case was charged and prosecuted given the defendant's medical issues, "judicial disagreement with the Commonwealth's election to prosecute . . . forms no permissible basis for judicial action."  Commonwealth v. Sattelmair, 55 Mass. App. Ct. 384, 388 (2002).  See Commonwealth v. Manning, 75 Mass. App. Ct. 829, 832 (2009) (art. 30 does not "'permit judges to substitute their judgment as to whom and what crimes to prosecute, for the judgment of those who are constitutionally charged with that duty,' namely, the prosecution" [citation omitted]).

closed.  The victim received two scratches on his chest that took about a week to heal.  After the encounter, the defendant was screaming in her room that she had been assaulted and touched by a male nurse.[3]

Brockton police Officer David Santos was dispatched to the hospital.  When exiting the elevator to the critical care unit, the officer heard the defendant yelling for people to "get the f . . . out of my room" and "he touched my pussy."  The officer then entered the exam room where a doctor was attempting to remove an IV from the defendant's arm and told her that she was "free to go."  The defendant was on her telephone video chatting with someone.  The officer asked the defendant to leave the room and she refused.  The officer placed the defendant under arrest for trespass.  The officer and another police officer attempted to handcuff her but the defendant laid on her arms.  Both officers and two hospital security guards could not secure her arms to arrest her.  The testifying officer subdued her with a taser in order to gain compliance.

The victim testified that Ativan is a benzodiazepine (an anti-anxiety medication).  He also testified that morphine,

---

[3] The defendant was not one of the victim's assigned patients that night.  He only responded to the room on an emergency basis.  When police later tried to speak to the defendant about her allegation of sexual assault, she refused to elaborate.

fentanyl, and hydromorphone are all forms of opiate pain medications, and that Ativan may have some significant side effects including confusion, and in some cases, hallucinations.[4]

2. The defendant's case. The defendant did not call any witnesses. She introduced her hospital records.

Discussion. 1. Motions for required finding of not guilty. At the close of the Commonwealth's case-in-chief and at the close of all the evidence, the defendant filed motions for a required finding of not guilty on the assault and battery charge, which were denied. In evaluating the denial of a motion for a required finding of not guilty at the close of the Commonwealth's evidence, we view the evidence in the light most favorable to the Commonwealth to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). In

---

[4] The defendant suggests in her brief that the transcript of the victim's testimony contained an error by mistakenly indicating that another side effect of Ativan is "a correction," rather than "aggression." The Commonwealth in response does not credit the victim as testifying "aggression" as a side effect of Ativan. We are "bound by the record as [we] receive[] it, the traditional rule being that errors in the record must be corrected before argument, normally in the trial court under the procedure set forth in Mass. R. A. P. 8 (e), as amended, 378 Mass. 934 (1979)" (citations omitted). Commonwealth v. James, 30 Mass. App. Ct. 490, 494 n.6 (1991). Absent a proper motion, we take the transcript as we find it. Given the testimony that Ativan may cause confusion and hallucinations, this is not material to the result here.

4

evaluating such a motion filed at the close of all the evidence, we "consider the state of the evidence . . . to determine whether the Commonwealth's position as to proof deteriorated after it closed its case."  Commonwealth v. Semedo, 456 Mass. 1, 8 (2010), quoting Commonwealth v. Sheline, 391 Mass. 279, 283 (1984).

Viewed in a light most favorable to the Commonwealth, the evidence in this case was sufficient to prove assault and battery on the nurse victim.  "[A]ssault and battery is the intentional and unjustified use of force upon the person of another, however slight."  Commonwealth v. McCan, 277 Mass. 199, 203 (1931).  The victim testified that when he entered the hospital room, the defendant yelled for him to leave, pushed him, and slammed the door.  He also stated that the confrontation resulted in lacerations on his chest that lasted for about a week.  In sum, the victim's testimony went directly toward proving that the defendant intentionally and unjustifiably touched him, see Commonwealth v. Travis, 408 Mass. 1, 8 (1990) ("Offensive physical contact, such as a push . . ., undertaken without consent, constitutes a battery in the Commonwealth"), and is sufficient evidence to prove assault and battery beyond a reasonable doubt, see Commonwealth v. Santos, 100 Mass. App. 1, 6 (2021) (a "victim's testimony alone,

believed . . . by the jury, [can] suffice[] to support the defendant's convictions").

The Commonwealth's case did not deteriorate after the defendant introduced her medical records.  The defendant argues that either the victim sexually assaulted the defendant or her belief that she had been sexually assaulted was reasonably mistaken in light of the medicines that she had been administered.  For purposes of a motion for a required finding, we resolve all credibility issues in favor of the Commonwealth.  Commonwealth v. Platt, 440 Mass. 396, 401 (2003).  Thus, we credit the victim's testimony that he did not assault the defendant.  As for the defendant's belief she had been sexually assaulted, "[o]nce self-defense is put in issue, the Commonwealth must prove that the defendant did not act in self-defense."  Commonwealth v. Kamishlian, 21 Mass. App. Ct. 931, 932 (1985).  Specifically,

> "the Commonwealth bears the burden of proving, beyond a reasonable doubt, that the defendant did not act in self-defense, by establishing that at least one of the three factors did not exist (i.e., that the defendant did not have reasonable concern for [her] safety, that [she] did not use all reasonable means to avoid physical combat, or that the force that was used was greater than necessary in all the circumstances of the case)."

Commonwealth v. King, 460 Mass. 80, 83 (2011), citing Commonwealth v. Glacken, 451 Mass. 163, 167 (2008).  Moreover, "[i]f the defendant's apprehension of grievous bodily harm or

6

death, though mistaken, was reasonable, [her] actions in self-defense may be justifiable." Commonwealth v. Pike, 428 Mass. 393, 396 (1998).

The core of the defendant's self-defense claim relies on the assertion that she had a reasonable but mistaken belief that her personal safety was in danger. Specifically, the stress of her health condition and the numerous medications that she was administered over the course of her treatment at the hospital contributed to her mistaken belief and ultimate decision to push the victim. However, as the Commonwealth proved in its case, this was not enough to show that the defendant had a reasonable concern for her personal safety. There was no evidence that the defendant's health episode or medication caused her to experience a mental lapse that would lead to such a mistaken belief. The victim's testimony that the medications that the defendant was administered during her stay at the hospital could cause side effects such as mood swings, confusion, and hallucinations, went to the weight of the evidence rather than providing conclusive proof of the defendant's mistaken belief. This was not deterioration that required a finding of not guilty. See Commonwealth v. Nhut Huynh, 452 Mass. 481, 485 (2008) (for purposes of motion for required finding, deterioration occurs "if, after the defendant's case, the Commonwealth's prima facie case has been shown to be 'incredible

7

or conclusively incorrect,' . . . . Deterioration does not occur simply because the defendant presented evidence that contradicted the Commonwealth's case").

2. Prosecutor's misstatements. a. The defendant argues that the prosecutor erred in referring to the defendant's push as an "assault and battery" during his direct examination of the victim.[5] As the defendant did not object to this statement at trial, our review is limited to whether any alleged error created a substantial risk of a miscarriage of justice. See Commonwealth v. Leary, 92 Mass. App. Ct. 332, 339 (2017).

The Commonwealth should not have used the conclusory phrase "assault and battery" when questioning the witness when the defendant was on trial for that exact charge. See Commonwealth v. Duarte, 97 Mass. App. Ct. 268, 275-276 (2020) (noting that it is "regrettable" that both prosecutor and witnesses used term "assault" when referring to alleged incident where defendant was on trial for assault and battery). However, here, this lone mention does not rise to the level of a substantial risk of a miscarriage of justice. It was not disputed here whether the defendant pushed the victim. The issue was whether she did so in self-defense or based on a mistaken belief. Moreover, the

_____

[5] Specifically, the prosecutor asked the victim, "You mentioned that you went to the emergency room that evening as a result of the assault and battery; is that correct?"

8

phrase was used in a question that did not solicit the victim's opinion.  The judge also instructed the jury on this issue, stating that "[a] question put to a witness is never evidence." See Commonwealth v. Dufresne, 489 Mass. 195, 208 (2022) (judge's instructions are presumed to be followed by jury).

We also conclude that the defendant was not deprived of effective assistance of trial counsel by counsel's failure to object when the prosecutor referred to "assault and battery" in questioning the victim.  "[W]hen a defendant alleges that his failure to preserve an issue for appeal stems from ineffective assistance of counsel, as this defendant has, we do not evaluate the ineffectiveness claim separately." Commonwealth v. Randolph, 438 Mass. 290, 296 (2002).  Instead, "ineffectiveness is presumed if the attorney's omission created a substantial risk, and disregarded if it did not."  Id.  See Commonwealth v. Curtis, 417 Mass. 619, 624 n.4 (1994) (explaining that "if an omission of counsel does not present a substantial risk of a miscarriage of justice . . . there is no basis for an ineffective assistance of counsel claim").

b.  The defendant further contends that during closing argument, the prosecutor misstated that the victim cleaned his wounds with alcohol, rather than with soap and water as he testified.  Defense counsel did not object.  An error made during closing argument creates a substantial risk of a

9

miscarriage of justice "if we have a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Silvelo, 96 Mass. App. Ct. 85, 91 (2019), quoting Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016). We have no such doubt here.

A prosecutor should not "misstate the evidence or refer to facts not in evidence." Commonwealth v. Kozec, 399 Mass. 514, 516 (1987). However, the prosecutor's erroneous reference to how the victim cleaned his wound in this case was not material. Moreover, any erroneous statement by the prosecutor was cured by the judge's instructions that closing arguments are not evidence and that "[t]he attorneys are not permitted to refer to facts that are not in evidence in this case. If based on your memory and understanding of the evidence a lawyer does this, you should disregard that comment." These instructions were sufficient to cure any prejudice, however slight, from the prosecutor's erroneous statement. Silvelo, 96 Mass. App. Ct. at 91. Given the immaterial nature of the misstatement, lack of any objection, and instructions of the judge, the prosecutor's error did not result in a "substantial risk of a miscarriage of justice." Commonwealth v. Freeman, 352 Mass. 556, 564 (1967).

c. Finally, the defendant contends that the prosecutor improperly played to the jury's sympathy by saying that the victim was "doing his job" and "responded to his duty by going

10

to room 12" when responding to the alarm at the desk.  These statements are not an example of "obscur[ing] the clarity with which the jury would look at the evidence," Commonwealth v. Niemic, 483 Mass. 571, 591 (2019), and did not result in a substantial risk of a miscarriage of justice.

Judgment affirmed.

By the Court (Henry, Desmond & Englander, JJ.[6]),

*Paul Little*

Clerk

Entered:  April 16, 2025.

---

[6] The panelists are listed in order of seniority.