NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11948

COMMONWEALTH  vs.  NKRUMAH N. HARTFIELD.

Suffolk.    February 9, 2016. - June 9, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.

Due Process of Law, Probation revocation.  Practice, Criminal,
    Revocation of probation, Hearsay, Confrontation of
    witnesses, Findings by judge.  Witness, Victim.  Evidence,
    Hearsay.

Complaint received and sworn to in the Dorchester Division
of the Boston Municipal Court Department on December 7, 2009.

A proceeding for revocation of probation was heard by
Jonathan R. Tynes, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

Kathleen J. Hill for the probationer.
Helle Sachse, Assistant District Attorney (Lynn S.
Feigenbaum, Assistant District Attorney, with her) for the
Commonwealth.
Crispin Birnbaum, Special Assistant Attorney General,
& Nina L. Pomponio for Commissioner of Probation, amicus curiae,
submitted a brief.

GANTS, C.J.  The primary issue on appeal is whether a judge's decision in a probation violation hearing to admit in evidence hearsay statements of an alleged victim regarding a new criminal offense bars the probationer from calling the alleged victim to testify.  We conclude that it does not.  Because the judge erred in concluding that it was inherently inconsistent to allow the alleged victim to be called to testify by the probationer after her hearsay statements were admitted in evidence when offered by the probation department, and because the error was constitutional in nature and not harmless beyond a reasonable doubt, we vacate the finding of a violation of probation and the order revoking probation, and remand for a new hearing.

Background.  We recite the facts based on the testimony and documentary evidence from the probation violation hearing held in the Dorchester Division of the Boston Municipal Court Department on July 2, 2013.  During the probation department's presentation of evidence, the judge heard testimony from the assistant chief probation officer and a Boston police detective, Ediberto Figueroa, who investigated the case.[1]  Over the probationer's objection, the judge also admitted in evidence the

---

[1] An assistant district attorney assisted the probation officer who was prosecuting the alleged violation by presenting evidence and making a closing argument.

alleged victim's testimony before the grand jury, two serology reports, and a deoxyribonucleic acid (DNA) report from the Boston police crime laboratory. The reports were admitted through the testimony of Detective Figueroa; no criminalist testified.

The probationer had been placed on probation supervision after pleading guilty to one count of possession of a class D substance with intent to distribute on March 29, 2011. He was sentenced to two and one-half years in a house of correction, which was suspended, and he was placed on probation until March 28, 2013. The conditions of probation required the probationer not to commit any crime and to pay all fees ordered by the court. On March 25, 2013, the probationer was found in violation of the terms of his probation for failure to pay $540 in fees, and his probation was extended until May 24, 2013, to allow him time to pay these fees.[2]

On April 3, 2013, a notice of probation violation issued alleging that the probationer violated the conditions of his probation by having committed three criminal offenses

---

[2] At the time he was found in violation, he had been assessed fees totaling approximately $1,950, including a $90 victim/witness fee, a $150 indigent counsel fee, a $150 drug analysis fee, and a $65 per month probation service fee. The probationer does not challenge on appeal the extension of his probation term based on his failure to pay these fees. The alleged violation of probation at issue in this appeal occurred during the original probationary period.

(aggravated rape, assault and battery, and threatening to commit a crime), and by failing to pay the balance of $540 in fees. The new offense allegedly occurred in the early morning of August 12, 2012, when the alleged victim, a seventeen year old girl who was the daughter of the probationer's girl friend, reported to police that she had been sexually assaulted by the probationer.

According to the alleged victim, she was sleeping in her bedroom in the apartment she shared with her mother and three siblings when a man entered her bedroom, threw a sweatshirt over her head, and threatened to stab her and her siblings if she screamed. The assailant then walked her out of her bedroom to the bathroom. There, he took off her shorts and underwear while she was standing and, after she got on the floor, lifted up her shirt and took off her bra. He then kissed her breasts and vaginally raped her. When she tried to push him off, he became upset, punched her several times, and said that he was about to stab her; she reported feeling a knife at her waist. He then got up and ran the water in the sink. She put on her underwear, and the assailant ordered her to get in the bathtub and stay in the bathroom. He then turned off the light, closed the door, and left. Even though the sweatshirt on her head had obstructed her vision, she told the police that she believed the probationer was the assailant.

The alleged victim was taken to a hospital and examined by a sexual assault nurse examiner who collected the underwear she was wearing during and after the assault and swabbed various places on her body, including her vaginal area, to preserve any trace evidence.  The police later went to the alleged victim's home and collected several pieces of evidence, including the shorts the alleged victim had worn at the time of the assault, which were found on top of the bathroom sink and were wet.

The alleged victim's mother told the police that the probationer could not possibly have been the assailant because she had stayed with the probationer at his house that night, and "he was under [her] all night."  The mother also stated that she would have noticed if he had left because she is a light sleeper.  She informed the police that she is the only person with a set of keys to the apartment.  She added that the alleged victim was known to lie.

The probationer, after waiving his Miranda rights, told the police that he did not rape the alleged victim and that he was at his home with her mother that evening.  He also said that he had not gotten along with the alleged victim since he found some embarrassing photographs on her cellular telephone and confronted her with the photographs.  The probationer also consented to a buccal swab to provide a sample of his DNA to the police.

The mother also told the police about the cellular telephone incident and the alleged victim's antagonism toward the probationer. The alleged victim described the cellular telephone incident in her grand jury testimony and said that, when the probationer returned the telephone, "[h]e wanted me to do whatever he said." She testified in the grand jury that the probationer had been in a relationship with her mother for eight or nine years, and she had not liked the probationer since she met him. She moved with her mother and her siblings to the apartment in Dorchester in October, 2011, but moved out in March, 2012, because she and her mother were not getting along due to the probationer. She returned home in July, 2012, but her mother had established a rule that the probationer and her daughter could not be in the apartment at the same time. The daughter's return home disrupted her mother's plans to go back to work, because the probationer was going to watch the mother's other children but could not do so because of the aforementioned rule.

On March 21, 2013, the police received a laboratory report that the probationer was included as a possible source of DNA recovered from semen stains found on the shorts retrieved from the bathroom and the underwear the alleged victim had worn when examined at the hospital. The likelihood that another African-American was the source of the DNA on the shorts was one in 490

quintillion; the likelihood of another African-American being the source of the DNA on the underwear was one in 720 quadrillion.[3,4]  However, preliminary testing for semen from two vaginal swabs, one genital swab, and one perianal swab taken from the alleged victim at the hospital were all negative.

After the probation department rested, the probationer sought to call the alleged victim as a witness; the probationer had summonsed her for the hearing, and the Commonwealth had transported her to the court house to avoid the possibility that a capias would issue.  The judge initially allowed her to testify over the objection of the probation department but, after allowing some initial questions regarding her difficult relationship with the probationer, the judge reconsidered his decision sua sponte and did not allow her to testify further. The judge explained his decision by stating:

---

[3] After learning the results of these laboratory tests, the police filed an application for a criminal complaint charging the probationer with aggravated rape, assault and battery, and threatening to commit a crime.  The probationer was later indicted on two counts of rape, in violation of G. L. c. 265, § 22 (b); assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A (b); assault and battery, in violation of G. L. c. 265, § 13A (a); indecent assault and battery, in violation of G. L. c. 265, § 13H; and intimidation of a witness, in violation of G. L. c. 268, § 13B.  He was found not guilty on all counts after a jury trial.

[4] It appears that Boston police Detective Ediberto Figueroa erroneously testified that the likelihood of an African-American being the source of the deoxyribonucleic acid (DNA) on the underwear was one in 8.9 billion.  The probationer is African-American.

"I do feel it's inconsistent to . . . allow the Commonwealth to not call [the alleged victim], but then have the defendant call her when it seems that one of the overriding principles is that . . . she shouldn't have to go through recounting this event several times."

At a subsequent hearing on July 23, 2013, the judge found by a preponderance of the evidence that the probationer violated his probation by committing a new offense, noting that "the testimony of Detective Figueroa and the DNA evidence . . . is the most compelling evidence."[5]  The judge then imposed the suspended sentence.[6]

The Appeals Court affirmed the revocation order in an unpublished memorandum and order issued pursuant to its rule 1:28, and we granted the defendant's application for further appellate review.

Discussion.  The probationer argues that by terminating his examination of the alleged victim, the hearing judge violated his due process right to present a defense.  He further argues that the admission of the alleged victim's grand jury testimony and the serology and DNA reports from the Boston police crime

---

[5] The judge did not make written findings.  Nor did the judge make oral findings on the record beyond those described.

[6] The judge, however, stayed imposition of the sentence at the request of the probationer, recognizing that the probationer would be held in custody until his trial on the charges stemming from the alleged sexual assault and that, if the sentence were not stayed, the probationer might not receive credit for the time served if he were convicted of those charges.  The stay appears to have been lifted the day after the probationer's acquittal on those charges.

laboratory violated his due process right to confront adverse witnesses.

A probation violation proceeding is not the equivalent of a criminal trial, and thus a probationer is not accorded "the full panoply of constitutional protections applicable at a criminal trial." Commonwealth v. Durling, 407 Mass. 108, 112 (1990). In Durling, supra at 113-114, this court adopted the minimum requirements of due process applicable to probation violation proceedings established by the United States Supreme Court in Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973). To conform with due process principles, a probationer must be provided:

> "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole."

Durling, supra at 113, quoting Gagnon, supra.

It is important to distinguish between the due process rights raised by the probationer's claims. "[T]he right to confront adverse witnesses and the right to present a defense are distinct due process rights separately guaranteed to probationers" and should not be conflated. Commonwealth v.

Kelsey, 464 Mass. 315, 327 n.12 (2013). The probationer's claim that the hearing judge terminated his examination of the alleged victim during the defense case implicates the right to present a defense. Id. The probationer's claim that hearsay evidence was wrongfully admitted against him during the probation department's case-in-chief implicates his right to confront and cross-examine adverse witnesses. See Commonwealth v. Negron, 441 Mass. 685, 690-691 (2004). These claims must be analyzed separately.

1. Right to present a defense. In Kelsey, 464 Mass. at 319-320, we examined for the first time the due process right to present a defense in a probation violation proceeding. In that case, a probationer was alleged to have violated his probation by selling cocaine to a confidential informant. Id. at 315. The confidential informant was "a participant in the alleged offense, the only nongovernment witness to the offense, and the only percipient witness to the entire alleged transaction." Id. at 316.

The probationer sought and was denied disclosure of the identity of the confidential informant for the purpose of defending against the alleged violation. Id. at 317-318. The probationer argued that the denial of disclosure violated his due process right to present a defense by denying him the opportunity to call the informant as a witness. Id. at 318,

319.  We declared that "a probationer must be given a meaningful opportunity to present a defense," id. at 321, which, "[i]n some cases, . . . will require disclosure to the probationer of information crucial to his ability to prepare a defense."  Id. at 322.  We further concluded that the right to present a defense in a probation violation proceeding "is parallel to, but not coextensive with, the right to present a defense at trial," id., and that the scope of that right "depends on the totality of the circumstances in each case" (citation omitted).  Id. "Where a probationer alleges a violation of the right to present a defense," we held, "the judge must consider whether a ruling in the probationer's favor will sufficiently advance the 'reliable, accurate evaluation of whether the probationer indeed violated the conditions of his probation,' . . . so as to outweigh the Commonwealth's 'significant interests in informality, flexibility, and economy'" (citations omitted). Id.

Because the judge in that case denied disclosure of the confidential informant's identity on the mistaken premise that such disclosure is never warranted in probation revocation proceedings, we remanded the matter to the District Court to permit the judge to determine, based on relevant case-specific factors, "whether, in the totality of the circumstances,

disclosure was necessary to effectuate the defendant's right to present a defense." Id. at 327.

In Kelsey, 464 Mass. at 323, the probationer's right to present a defense clashed with "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law," Roviaro v. United States, 353 U.S. 53, 59 (1957), known as "the informer's privilege." Id. Here, the probationer's constitutional right to present a defense did not clash with any privilege.

Where this constitutional right does not conflict with any privilege, the totality of the circumstances test must be structured and applied to ensure that adequate weight is given to the protection of the constitutional right and to the importance of making a "reliable, accurate evaluation of whether the probationer indeed violated the conditions of his probation." Kelsey, 464 Mass. at 322, quoting Durling, 407 Mass. at 116. We conclude that this is best accomplished by recognizing that a probationer has a presumptive due process right to call witnesses in his or her defense, but that the presumption may be overcome by countervailing interests, generally that the proposed testimony is unnecessary to a fair adjudication of the alleged violation or unduly burdensome to the witness or the resources of the court. In determining

whether the countervailing interests overcome the presumption after considering the totality of the circumstances, a judge should consider, at a minimum, the following factors:  (1) whether the proposed testimony of the witness might be significant in determining whether it is more likely than not that the probationer violated the conditions of probation, see Kelsey, supra; (2) whether, based on the proffer of the witness's testimony, the witness would provide evidence that adds to or differs from previously admitted evidence rather than be cumulative of that evidence, cf. Commonwealth v. Carroll, 439 Mass. 547, 552-553 (2003); and (3) whether, based on an individualized assessment of the witness, there is an unacceptable risk that the witness's physical, psychological, or emotional health would be significantly jeopardized if the witness were required to testify in court at the probation hearing, cf. Commonwealth v. Housewright, 470 Mass. 665, 671 (2015).  As to the third factor, we recognize the risk that an alleged sexual assault victim might suffer trauma from having to testify at a probation violation hearing.  See Durling, 407 Mass. at 117 n.4; Commonwealth v. Hill, 52 Mass. App. Ct. 147, 153 (2001).  But we reject a general rule that would prevent a probationer from ever calling such an alleged victim to testify in his or her defense.  The assessment whether testifying will adversely affect the physical, psychological, or emotional

health of an alleged sexual assault victim must be individualized and evidence-based.  See Durling, supra at 114 ("the requirements of due process depend on the circumstances of each case and an analysis of the various interests at stake").

Here, the judge determined that, because he admitted hearsay evidence regarding what the alleged victim reported to Detective Figueroa and what she said under oath in the grand jury proceeding, the probationer had no right to call her to testify.  This reasoning reflects the error of conflating the probationer's right to confront and cross-examine adverse witnesses with the probationer's right to present a defense.  See Kelsey, 464 Mass. at 327 n.12.  Where hearsay evidence has substantial indicia of reliability, there is good cause to admit it in evidence at a probation violation hearing even though, as is generally true of hearsay, the declarant will not be on the witness stand and subject to cross-examination regarding the hearsay statements.  See Commonwealth v. Patton, 458 Mass. 119, 132 (2010); Negron, 441 Mass. at 690-691.  The probation department may meet its burden of proof to establish a violation solely through the admission of hearsay with substantial indicia of reliability.  See Patton, supra; Durling, 407 Mass. at 118.  But the admission of this evidence does not mean that the probationer is absolutely barred from calling as a witness the declarant whose hearsay was admitted.  The judge may consider

the admission of the hearsay evidence in determining in the totality of circumstances whether the witness's testimony would be merely cumulative.  However, the testimony would not be cumulative where the probationer seeks to elicit from the witness additional information that would support the inference that the probationer did not commit the violation or would demonstrate that the hearsay evidence suggesting that he did commit the violation is unworthy of belief.

A judge's decision after considering the totality of circumstances to allow a probationer to call a witness in his or her defense does not mean that the judge no longer controls the scope of that testimony.  Where a probationer's examination of a witness strays into issues that are irrelevant to the determination of whether the probationer violated the conditions of probation, cumulative of other evidence, or unduly harassing to the witness, the judge, consistent with due process, may restrict the scope of such testimony.  See Commonwealth v. Odoardi, 397 Mass. 28, 34 (1986).  Cf. Mass. G. Evid. § 611(a) (2016).

Here, the record does not reveal that the hearing judge made an individualized assessment of the totality of the circumstances before cutting off the alleged victim's testimony. Nor did the judge rest the decision to terminate her testimony on a finding that the testimony was irrelevant, cumulative, or

harassing.  Rather, as earlier noted, the judge made the error of conflating the right to present a defense with the right to confront and cross-examine witnesses, and determined that, where there is good cause to admit an alleged victim's hearsay, the probationer may not call the witness to the stand to challenge the veracity and accuracy of the hearsay account.

Because the judge's error affects the probationer's constitutional right to present a defense and was preserved at the hearing, we review to determine whether the error was "harmless beyond a reasonable doubt."  Kelsey, 464 Mass. at 319, quoting Commonwealth v. Bacigalupo, 455 Mass. 485, 495 (2009).  We conclude that it was not.  See Kelsey, supra at 327-328.  It is not plain from the totality of the circumstances here that countervailing interests overcome the probationer's presumptive right to call the alleged victim as a witness.  The results of the DNA tests provided powerful corroborating evidence of the probationer's commission of the sexual assault, but there were still strong reasons to question the credibility of the alleged victim:  the implausibility that the assailant could have covered her eyes with a sweatshirt throughout the sexual assault where she reported that he took off her underwear, shorts, and bra, and held a knife to her waist; her mother's corroboration of the probationer's alibi; the strong antagonism between the alleged victim and the probationer; and the absence of any

evidence of semen on the vaginal and genital swabs taken from the alleged victim despite her report that he had penetrated her with his penis and the presence of semen on the underwear she claimed she put on immediately after the sexual assault. Pragmatically, to prevail at the revocation hearing given the evidence already admitted, the probationer needed to establish that it was more likely than not that the alleged victim fabricated the alleged rape and attempted falsely to implicate the probationer by planting his DNA on her underwear and shorts. His best chance to do so was through the alleged victim's testimony. Where revocation would result in the imposition of a previously suspended two and one-half year house of correction sentence, we cannot say that it is plain that the countervailing interests in barring her testimony so outweighed the probationer's presumptive right to call the alleged victim in his defense that the error in failing to apply the proper analysis was harmless beyond a reasonable doubt. We therefore vacate the finding of a violation of probation and the order revoking probation, and we remand for a new hearing.

2. <u>Right to confront adverse witnesses</u>. The probationer also argues that his due process right to confront adverse witnesses was violated by the admission of two serology reports and a DNA report from the Boston police crime laboratory and by the admission of the alleged victim's grand jury testimony.

We have already noted that hearsay evidence is admissible in a probation violation hearing where it has substantial indicia of reliability.  In assessing whether the hearsay evidence is reliable, a hearing judge may consider (1) whether the evidence is based on personal knowledge or direct observation; (2) whether the evidence, if based on direct observation, was recorded close in time to the events in question; (3) the level of factual detail; (4) whether the statements are internally consistent; (5) whether the evidence is corroborated by information from other sources; (6) whether the declarant was disinterested when the statements were made; and (7) whether the statements were made under circumstances that support their veracity.  See Patton, 458 Mass. at 132-133; Rule 7(b) of District/Municipal Courts Rules for Probation Violation Proceedings, Mass. Ann. Laws Court Rules, at 97 (LexisNexis 2015-2016).[7]

Here, the two serology reports and the DNA report from the Boston police crime laboratory were not certified, and the probation department sought to introduce them through Detective Figueroa, who was not their author.  The alleged victim's grand jury testimony also was offered through the testimony of Detective Figueroa.  The probationer objected to their admission

---

[7] The District and Municipal Courts Rules for Probation Violation Proceedings were amended in 2015, with amended Rule 7 replacing superseded Rule 6.

in evidence. The judge admitted the hearsay evidence, and in finding that the probationer violated the conditions of probation, the judge noted his reliance on the testimony of Detective Figueroa -- which contained many hearsay statements from various individuals the detective interviewed -- and the DNA report, but the judge made no written findings regarding the reliability of the hearsay evidence on which he relied. Consequently, apart from the DNA report, we cannot determine which hearsay evidence the judge relied upon in finding a violation of probation, or whether the judge found that evidence to have substantial indicia of reliability.

Due process requires that a judge issue a written statement regarding the evidence relied upon and the reasons for revoking probation. Durling, 407 Mass. at 113, quoting Gagnon, 411 U.S. at 786.[8] In addition, when probation was revoked in this case, the rules governing probation violation proceedings in the District Court required judges, "[w]here the sole evidence submitted to prove a violation of probation is hearsay," to make written findings that the hearsay evidence "is substantially

---

[8] We have declared that a judge satisfies this due process requirement where the findings are made orally on the record and the probationer obtains a transcript of the findings. See Commonwealth v. Durling, 407 Mass. 108, 113 (1990), citing Fay v. Commonwealth, 379 Mass. 498, 504-505 (1980) (judge's oral statement on record, when transcribed, satisfied requirement of written record).

trustworthy and demonstrably reliable."  Rule 6(b) of the
District Court Rules for Probation Violation Proceedings, Mass.
Ann. Laws Court Rules, at 94 (LexisNexis 2011-2012).  But those
rules were adopted only by the District Court, not the Boston
Municipal Court, where the probation revocation proceeding in
this case was adjudicated.[9]

Even if not required by court rule, we conclude that, where
a judge relies on hearsay evidence in finding a violation of
probation, the judge should set forth in writing or on the
record why the judge found the hearsay evidence to be reliable.
See Commonwealth v. Nunez, 446 Mass. 54, 59 & n.6 (2006) (where
judge admits hearsay evidence in probation revocation hearing,
"[i]t is advisable" that judge's finding regarding reliability
of that evidence "be stated on the record").  Accordingly, on
remand, if the judge were again to rely on hearsay evidence in
finding a violation of probation, the judge should make
findings, either in writing or orally on the record, why the
judge found the relevant hearsay evidence to be reliable.

Conclusion.  The finding that the probationer violated the
conditions of his probation and the order revoking probation are

---

[9] The rules as amended in 2015 contain a similar requirement
and were adopted by both the District Court and the Boston
Municipal Court.  Rules 1, 7(b) of the District/Municipal Courts
Rules for Probation Violation Proceedings, Mass. Ann. Laws Court
Rules, at 75, 97 (LexisNexis 2015-2016).

vacated, and the case is remanded for further proceedings consistent with this opinion.

So ordered.