A Superior Court judge found the defendant to be in violation of his probation and sentenced him to a State prison sentence of five years to five years and one day. The defendant later filed a motion to revise and revoke that sentence after the Commonwealth filed a nolle prosequi as to the indictments that formed part of the basis of his probation violation. That motion was denied, a decision the defendant now appeals. We affirm.
Background. In 2009, the defendant was indicted on eight charges, including two counts of assault and battery with a dangerous weapon. He pleaded guilty to seven of those charges[2] in 2011 and was given concurrent sentences of three years to three years and one day in State prison, followed by a three-year probationary term. Following his release, the defendant was indicted in 2015 on several new charges stemming from an armed home invasion and shooting. A notice of probation surrender was filed against the defendant, alleging that he violated his probation by committing the new offenses he was indicted for in 2015, committing an additional offense being prosecuted in the Boston Municipal Court (BMC), and for a series of probation violations he termed "technical."[3] The defendant stipulated to the "technical violations" and to the fact that he had been arraigned in the BMC,[4] but contested the alleged violation resulting from his new indictments.
The defendant's 2015 indictments stemmed from an investigation into a shooting that took place in 2014. A detective spoke to the victim, who was hospitalized, the day after the shooting and received the following information about the attack. On November 14, 2014, three men and one woman arrived at the victim's house at 4:30 A.M. The victim was home with other friends, and while he recognized the four people that arrived he only knew one by a nickname, "Bless".[5] That group left after approximately fifteen minutes, then returned at 5:30 A.M. and found the victim home alone. The victim allowed them to enter, at which time Bless and another codefendant produced handguns. They told the victim to empty his pockets. He complied, then attempted to barricade himself in his office, but was shot by Bless before he could close the door. The victim's dog was also fatally shot before the assailants fled.
When speaking to the detective, the victim said that while he did not know his attackers by name, he was familiar with who they were and was confident that he would be able to identify them through Facebook. He gave police a detailed description of all four of his attackers, including the defendant, and noted that the defendant was a Hispanic male, standing approximately five feet eleven inches or six feet and weighing between 190 and 210 pounds, and possibly having a teardrop tattooed on his face. The victim later presented the detective with a picture he had found on Facebook that showed the defendant, another codefendant, and a third person. The defendant matched the victim's description, except he did not have a facial tattoo. Based on the picture and description provided by the victim, the detective presented the victim with a photo array. The victim positively identified the defendant as one of his attackers.
At the probation surrender hearing, the Commonwealth presented the following evidence: a transcript of the interview between the victim and the detective on the day after the attack; grand jury testimony from the victim and detective and the exhibits admitted before the grand jury; the transcript and exhibits from the defendant's motion to suppress his identification[6] and the judge's written denial of that motion. The defendant challenged all of the Commonwealth's evidence as hearsay lacking sufficient indicia of reliability to form the basis of a probation revocation. The judge took the matter under advisement, and ultimately determined the hearsay to be reliable and found the defendant to be in violation of his probation. The Commonwealth later filed a nolle prosequi for the 2015 indictments against the defendant.
On appeal, the defendant argues that the evidence presented against him at the surrender hearing was all hearsay and that it lacked sufficient indicia of reliability to support the probation violation. Therefore, he argues, the judge's reliance on that evidence in revoking his probation was an abuse of discretion, which exists when a judge makes "a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotations and citations omitted).
"Any conduct by a person on probation [that] constitutes a violation of any of the conditions of his probation may form the basis for the revocation of that probation." Commonwealth v. Durling, 407 Mass. 108, 112 (1990), quoting from Rubera v. Commonwealth, 371 Mass. 177, 180-181 (1976). The burden is on the Commonwealth to prove a violation by a preponderance of the evidence. Commonwealth v. Bukin, 467 Mass. 516, 520 (2014).
A probation revocation hearing does not carry with it "the 'full panoply of constitutional protections applicable at a criminal trial.' " Bukin, supra, quoting from Durling, supra at 112-113. Hearsay evidence is admissible if reliable, and can form the sole basis for a revocation if it has "substantial indicia of reliability." Durling, supra at 118. Such indicia include "(1) whether the evidence is based on personal knowledge or direct observation; (2) whether the evidence, if based on direct observation, was recorded close in time to the events in question; (3) the level of factual detail; (4) whether the statements are internally consistent; (5) whether the evidence is corroborated by information from other sources; (6) whether the declarant was disinterested when the statements were made; and (7) whether the statements were made under circumstances that support their veracity." Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016).
We conclude that there was no error in the judge's determination that the hearsay evidence presented at the probation revocation hearing was reliable. The transcripts provided from the victim's conversation with the detective at the hospital and his grand jury testimony provided extensive detail about the events of the night of his attack, much of which was corroborated during the police investigation.[7] The conversation with the detective took place the day after the attack, he provided a photograph of the defendant from Facebook within two weeks of the attack, and he identified the defendant in a photo array fewer than six weeks after the attack. He provided a thorough description of the defendant and was able to identify him through Facebook, as he told officers he would be able to do. There were no inconsistencies between the different pieces of hearsay evidence, and much of the evidence bore additional circumstantial reliability, including the fact that the victim was under the penalties of perjury when he testified before the grand jury. See Hartfield, supra.
Despite the defendant's arguments, the judge was justified in relying on the challenged hearsay evidence in determining the defendant had violated the terms of his probation. It is "within the judge's exclusive province" to weigh evidence and assess credibility,[8] and we discern no error in his decision. Commonwealth v. Janovich, 55 Mass. App. Ct. 42, 50 (2002), quoting from Commonwealth v. Ruci, 409 Mass. 94, 97 (1991). We further note that irrespective of the argument presented on appeal, it would have been within the judge's discretion to impose the sentence the defendant received solely based on the numerous other probation violations.
Order denying motion to revise and revoke sentence affirmed.

His eighth indictment, for use of a firearm while committing a felony, was dismissed.

The defendant had failed to report to probation, verify his address, or verify his employment, and had left the Commonwealth without permission from probation.

He did not stipulate to the facts underlying his arraignment in the BMC, which was for larceny.

He did not know the defendant by his legal name. He only knew one codefendant by the nickname "Bless," and knew that Bless's fiancee had been murdered shortly before this time.

At the motion to suppress hearing, a long-time family friend of the defendant testified that the individual the victim identified as the defendant in a Facebook picture was, in fact, the defendant's brother.

His detailed description of the defendant matched the defendant's appearance and the crime scene corroborated his version of the events of the attack, including the injuries to his dog that led to the dog's euthanasia.

For example, the judge was free to discredit the self-serving testimony of the defense witness at the motion to suppress hearing that indicated the defendant was falsely identified in the Facebook picture.