On December 13, 2016, the defendant, a juvenile, was adjudicated delinquent after pleading guilty to unarmed robbery of a person age sixty or older, in violation of G. L. c. 265, § 19(a ). The juvenile was committed to the Department of Youth Services (DYS) until his eighteenth birthday. The Juvenile Court subsequently suspended this sentence and placed the juvenile on probation. On February 21, 2017, the juvenile was notified of a violation of his probation for possessing a firearm without a firearm identification card (FID card), in violation of G. L. c. 269, § 10, and receiving stolen property valued over $250, in violation of G. L. c. 266, § 60.[2] After a hearing on March 21, 2017, the Juvenile Court judge found that the juvenile violated his probation. The judge revoked the juvenile's previously suspended sentence from December 13, 2016, and committed the juvenile to DYS custody until his eighteenth birthday.
The juvenile appeals, arguing that: (1) the revocation of his probation was error because the judge relied on hearsay statements that lacked sufficient indicia of reliability, and (2) even if the hearsay statements were reliable, there was insufficient evidence to support the judge's finding that the juvenile committed the crime of possessing a firearm without an FID card.[3] We affirm.
Factual Background. We recite the essential facts reflected in the record. On February 18, 2017, Officer Camacho and four other police officers responded to a report of a breaking and entering in progress. Upon entering the house, Officer Camacho and another officer made their way up to the attic on the third floor. Officer Camacho testified that there were "numerous teens" in the attic and that he observed the juvenile sitting on a chair that had a black jacket hanging on the back of it. After Officer Camacho observed what he thought was "the butt of a gun" in one of the teen's pockets, all of the teens were ordered "up against the wall."[4] Thereafter, "another handgun" was observed in the corner of the attic.[5] The officers subsequently ordered the teens to lower to the ground "on their knees and to maintain their hands up on the wall." Officer Camacho thereafter observed a "pink and white" handgun "in the black jacket" hanging on the back of the chair where the juvenile was originally sitting. Officer Camacho testified that the handgun was "heavy" and "weigh[ed] down" the black jacket. Officer Camacho further testified that the handgun had no magazine, but "appeared to be ... working" because another officer was able to "slide the rack back." After the officers called the handgun's serial number in to dispatch, the officers learned that the handgun had been stolen from a burglary in Maine. Two of the teens at the house, MJ and JJ, both of whom were present in the attic at the time the officers entered, told Officer Camacho that the black jacket belonged to the juvenile. Later that evening, EJ, who was also present in the attic at the time the officers entered, arrived at the police station and told Officer Camacho that the gun was his and that "he placed the gun in [the juvenile's] black jacket" while "they were in the car" before going to the party. EJ also told Officer Camacho that the handgun "was pink and white - or pink, and that it had no magazine."
Discussion. The juvenile argues that the judge's finding that the juvenile violated his probation was based "entirely on hearsay that lacks sufficient indicia of reliability."[6] We disagree.
"Although revocation of probation may be based upon a violation of criminal law, there is no prerequisite that the probationer be convicted." Commonwealth v. Emmanuel E., 52 Mass. App. Ct. 451, 453 (2001) (quotation omitted). The Commonwealth, therefore, need only "produce evidence that would permit the judge to determine by a preponderance of the evidence that the juvenile had violated ... a criminal law." Ibid. Hearsay evidence may be relied upon so long as it has substantial indicia of reliability. Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016). In determining the trustworthiness and reliability of hearsay evidence, a judge may consider:
"(1) whether the evidence is based on personal knowledge or direct observation; (2) whether the evidence, if based on direct observation, was recorded close in time to the events in question; (3) the level of factual detail; (4) whether the statements are internally consistent; (5) whether the evidence is corroborated by information from other sources; (6) whether the declarant was disinterested when the statements were made; and (7) whether the statements were made under circumstances that support their veracity." Ibid.
Here, Officer Camacho's testimony was not based solely on hearsay statements, rather, his testimony, which the judge specifically credited, included his personal observation that the juvenile was sitting in the chair that had the black jacket hanging on the back of it. The portions of Officer Camacho's testimony that did contain hearsay statements from MJ and JJ had, as the judge found, an indicium of reliability. MJ's and JJ's statements to Officer Camacho were internally consistent with each other, and corroborated Officer Camacho's personal observations. In addition, both MJ and JJ were in the attic with the juvenile when Officer Camacho arrived, and their statements were given on the same night as the incident. While MJ and JJ could be viewed as declarants who were not disinterested at the time they provided their statements, there is "no requirement that hearsay satisfy all [of the trustworthiness and reliability] criteria." Commonwealth v. Patton, 458 Mass. 119, 133 (2010).[7] Here, satisfaction of the other hearsay criteria substantially supports the veracity and reliability of MJ's and JJ's statements to Officer Camacho. Furthermore, as the judge noted, Officer Camacho "was available to be cross examined and was cross examined diligently by defense counsel." We see no error.
The juvenile next argues that even if the hearsay statements were reliable, there was insufficient evidence to prove that he committed the crime of possessing a firearm without an FID card. A judge's determination as to whether certain terms of probation have been violated "is based only on a preponderance of the evidence, not proof beyond a reasonable doubt." Commonwealth v. King, 71 Mass. App. Ct. 737, 740 (2008) (quotation omitted). Constructive possession requires "knowledge coupled with the ability and intention to exercise dominion and control." Commonwealth v. Rosa, 17 Mass. App. Ct. 495, 498 (1984) (quotation omitted). Although "presence in an area where [a weapon] is found alone cannot show the requisite knowledge, power, or intention to exercise control over the [weapon], ... presence, supplemented by other incriminating evidence, will serve to tip the scale in favor of sufficiency." Commonwealth v. Brzezinski, 405 Mass. 401, 409-410 (1989) (quotations omitted). Here, the juvenile was not merely present in the attic. The evidence showed that he was in close proximity to the handgun, he owned the black jacket in which the handgun was found, and the "heavy" handgun was allegedly placed in his jacket pocket before going to the party. A fact finder could infer from such evidence that the defendant was not only aware of the "heavy" handgun in his jacket pocket, but also that he had the ability and intent to exercise control over it. We, thus, agree with the judge that the Commonwealth proved by a preponderance of the evidence that the juvenile constructively possessed the firearm and therefore violated his probation.[8] The juvenile's remaining arguments have not been overlooked. They do not require discussion.[9]
Order revoking probation affirmed.

The delinquency complaint also included a charge for improper storage of a firearm, in violation of G. L. c. 140, § 131L(a ), (b ). This count was later dismissed.

The juvenile's brief presents no legal argument on the stolen property charge.

This object was later identified as a BB gun.

This second object was also later identified as a BB gun.

The juvenile only challenges the statements made by MJ and JJ as lacking sufficient indicia of reliability.

We find it noteworthy, as the Commonwealth points out in its brief, that MJ and JJ made their statements to Officer Camacho even when such statements could have subjected them to "potential ... prosecution in the event they lied to police." See G. L. c. 269, § 13A. See also Commonwealth v. Nunez, 446 Mass. 54, 59 (2006).

In any event, the juvenile also was found in violation of his probation for receiving stolen property, but his brief presents no legal argument on that charge. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).