NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-459                                              Appeals Court

COMMONWEALTH  vs.  GRANT G., a juvenile.[1]

No. 18-P-459.

Suffolk.      March 27, 2019. - December 17, 2019.

Present:  Rubin, Milkey, & McDonough, JJ.

Practice, Criminal, Juvenile delinquency proceeding, Revocation of probation, Hearsay.  Due Process of Law, Probation revocation.  Evidence, Juvenile delinquency, Hearsay.  Department of Children & Families.  Department of Youth Services.  Juvenile Court, Delinquent child.

Complaints received and sworn to in the Suffolk County Division of the Juvenile Court Department on October 6 and 14, 2014.

A proceeding for revocation of probation was heard by Peter M. Coyne, J.

Benjamin L. Falkner for the juvenile.
Houston Armstrong, Assistant District Attorney, for the Commonwealth.

---

[1] A pseudonym.

MCDONOUGH, J. The juvenile appeals from a judge's order revoking his probation, arguing that the judge erroneously based his decision exclusively on unreliable hearsay testimony from a Department of Children and Families (DCF) case worker. We agree and reverse.

Background. We recite the facts based on the testimony and documentary evidence from the probation violation hearing. On August 17, 2016, the juvenile pleaded delinquent to kidnapping and armed robbery in the Juvenile Court. On the same day, in a separate case, the juvenile also pleaded delinquent to larceny of a credit card and credit card fraud over $250. On all four charges, the judge sentenced the juvenile to remain in the custody of the Department of Youth Services (DYS) until his eighteenth birthday, but suspended the sentence and placed the juvenile on probation until his eighteenth birthday. The conditions of the probation included, among other things, obeying a curfew as set by "DCF placement" and "comply[ing] with all DCF services and all placements."

On June 19, 2017, a probation violation notice (violation notice) issued alleging that the juvenile violated his probation by committing a new criminal offense, receiving a stolen motor vehicle.[2] The probation department thereafter amended the

---

[2] At the juvenile's probation revocation hearing, the judge explicitly stated that he was "not considering the allegation

violation notice, alleging that the juvenile violated two additional probation conditions:  complying with and successfully completing his residential placement program at Journey Home (program).  Specifically, the violation notice alleged that the juvenile was "AWOL" from the program on various specified dates.[3]

At the October 2, 2017, probation revocation hearing, the Commonwealth presented the testimony of one witness, the juvenile's DCF case worker.[4]  The case worker testified that he met with the program director, who told him that the juvenile "ha[d] broken all the rules and . . . wasn't cooperating with DCF and . . . ha[d] been AWOL from the program several times." The case worker testified that he understood "AWOL" to mean "the child is not at the program and his whereabouts are. . . . unknown or he. . . . hasn't called the program to report where he is."  Specifically, the case worker testified that the program director told him that the juvenile was given a "day

_____

based upon a new arrest" in determining whether the juvenile violated his probation.

[3] The violation notice stated that the juvenile "failed to attend or successfully complete" the program because he was "AWOL from [the program] 8/2/17-8/4/17, 7/25/17-7/30/17," and "[f]ailed to comply with [the program on] various dates from 4/15/17-8/9/17."

[4] Although the revocation hearing occurred on October 2, 2017, the judge continued the disposition of the case until October 23, 2017, at the probation officer's request.

pass" that permitted the juvenile to visit his uncle "just for a day and . . . return to the program the same day," but the juvenile "didn't return to . . . the program . . . for several days."  The case worker further testified that the juvenile was not attending school consistently, had "unauthorized contact with his mother," and "had a substance abuse issue at the program."  Based on those purported violations of the program rules, the case worker testified that it was decided to remove the juvenile from the program and to "close out [his] bed."

Nevertheless, on cross-examination, the case worker conceded that he never read the program rules or regulations and did not know how the program defined "AWOL."  He also conceded that he did not know the dates that the juvenile was "AWOL," or that on certain occasions program staff had apparently allowed the juvenile to stay with his uncle overnight after speaking with the juvenile and determining, with DCF's consent, that the juvenile was safe and would return the following day.[5]  The case

---

[5] On cross-examination, the case worker testified as follows:

Q.:  "[A]re you aware of any instances where [the juvenile] was allowed to go home on the day pass and at that moment, a decision was made to allow him to stay overnight on the day pass?  Are you aware of incidents like that?"

A.:  "Ah, I -- I don't think that ever happened."

Q.:  "You don't think that ever happened?"

worker also admitted that he was not assigned to the juvenile's case when the alleged violations occurred, and that his testimony was based exclusively on his conversations with the program director and notes in the juvenile's DCF case file.

_____

A.:  "No."

.  .  .  .

Q.:  "So your testimony, sir, today is that you don't think that there were any incidents in which [the juvenile] was allowed by -- a decision was made that allowed [the juvenile] to stay overnight.  That was your testimony, -- "

A.:  "Yes."

Q.:  " -- is that correct?"

A.:  "Yes."

Q.:  "Yes.  So, in fact, on May 27 according to the Journey Home by their written record, the Journey Home received a call from a -- the supervisor contacted DCF; DCF stated that since [the juvenile] usually does this every Saturday, that it made no sense to contact the police and file a missing person if the staff was able to talk to [the juvenile] and know that [he] was safe and will be picked up on Sunday night at 10:00 p.m., isn't that correct?"

A.:  "Is that the only incident?"

Q.:  "Sir, the question is, 'Are you now aware of incidents in which [the juvenile] was allowed to stay overnight by both DCF -- '"

A.:  "Well, I just learn[ed] it now."

Q.:  " -- and Journey Home staff?"

A.:  "I just learn it now."

The judge ultimately found that the juvenile violated the conditions of his probation by "fail[ing] to comply with . . . and . . . being AWOL from the program," and revoked his probation, committing him DYS custody until his eighteenth birthday.  The judge stated that "[p]robation ha[d] met its burden" based on "the witness [being] credible in his testimony about the [juvenile's] compliance with the [program] . . . and base[d] further upon [the witness's] statements of . . . what he was informed by the program director that the [juvenile] had been AWOL from the program and non-compliant in the program." According to the probation violation finding and disposition form, the judge found that the case worker's hearsay testimony was substantially reliable because it was "provided by a disinterested witness," "provided under circumstances that support the veracity of the source," "factually detailed," and "internally consistent."[6]

Discussion.  The Commonwealth must prove any "violation of probation by a preponderance of the evidence." Commonwealth v. Bukin, 467 Mass. 516, 520 (2014).  The determination that a probation violation occurred "lies within the discretion of the hearing judge," id., who must assess the weight of the evidence against the probationer.  Id. at 521.  Accordingly, we review an

---

[6] The judge did not explain his reasoning for these findings.

order revoking probation for an abuse of discretion.  Id. at 519-520.  We determine "whether the record discloses sufficient reliable evidence to warrant the findings by the judge that [the probationer] had violated the specified conditions of his probation."  Commonwealth v. Morse, 50 Mass. App. Ct. 582, 594 (2000).

A probation revocation hearing does not involve the "the full panoply of constitutional protections applicable at a criminal trial" (quotation omitted).  Bukin, 467 Mass. at 520.  Consequently, "while [u]nsubstantiated and unreliable hearsay cannot, consistent with due process, be the entire basis of a probation revocation, [w]hen hearsay evidence is reliable . . . , then it can be the basis of a revocation" (quotation omitted).  Id.  A judge may rely on hearsay evidence "in a probation violation hearing where it has substantial indicia of reliability."  Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016).  When evaluating the reliability of hearsay evidence, a judge:

> "may consider (1) whether the evidence is based on personal knowledge or direct observation; (2) whether the evidence, if based on direct observation, was recorded close in time to the events in question; (3) the level of factual detail; (4) whether the statements are internally consistent; (5) whether the evidence is corroborated by information from other sources; (6) whether the declarant was disinterested when the statements were made; and (7) whether the statements were made under circumstances that support their veracity."

Id. A hearsay statement does not need to "satisfy all [of those] criteria to be trustworthy and reliable." Commonwealth v. Patton, 458 Mass. 119, 132-133 (2010). Nevertheless, a judge who "relies on hearsay evidence in finding a violation of probation . . . should set forth in writing or on the record why [the judge] found the hearsay evidence to be reliable."[7] Hartfield, supra at 485. "[W]hen hearsay is offered as the only evidence of the alleged violation, the indicia of reliability must be substantial" (citation omitted). Commonwealth v. Foster, 77 Mass. App. Ct. 444, 449-450 (2010).

Here, the juvenile contends that the judge improperly considered unreliable hearsay testimony from the case worker in finding that he violated his probation conditions, specifically in regards to the allegation that he was "AWOL" from the

---

[7] Per Standing Order 1-17 (VII) (b) of the Juvenile Court Standing Orders (effective September 25, 2017), addressing violation of probation proceedings, hearsay evidence may be legally sufficient to establish a violation of probation only if the hearsay is found to be "substantially reliable." "Where hearsay evidence has substantial indicia of reliability, there is good cause to rely upon it as evidence at a probation violation hearing even though, as is generally true of hearsay, the declarant will not be on the witness stand and subject to cross-examination regarding the hearsay statements." Hartfield, 474 Mass. at 482. Here, as we explain infra, the hearsay evidence presented lacks the requisite "substantial indicia of reliability." Id.

program.[8] The juvenile asserts that those hearsay statements were unreliable because they were too generalized, not based on the case worker's personal knowledge, and not corroborated by other evidence.

We agree, and conclude that the testimony from the case worker lacked the "indicia of reliability" required to support finding that the juvenile violated his probation. Hartfield, 474 Mass. at 484. See Bukin, 467 Mass. at 521-522. Significantly, the case worker's testimony lacked the requisite factual detail. Although the case worker testified that the juvenile "ha[d] been AWOL from the program several times," he did not know any of the dates the juvenile was absent from the program without permission. See Commonwealth v. Ivers, 56 Mass. App. Ct. 444, 448 (2002) (hearsay not factually detailed where probation officer's testimony "speaks to no detail as to terms of probation, dates, and events that describe a failure . . . to report as required"). On cross-examination, the case worker conceded that he had not read the program regulations and did not know how those regulations defined "AWOL." The case worker also admitted that he was not aware whether the juvenile had been allowed to stay overnight on a day pass, including during

---

[8] The juvenile also made this argument as to the testimony alleging that he was not consistently attending school and had a substance abuse issue while at the program.

the dates listed on the violation notice.  The case worker further conceded that in the past, program staff, in consultation with DCF, had apparently allowed the juvenile to stay with his uncle overnight; a circumstance which, if true on the dates in question, could undercut the allegation that the juvenile was absent without permission from the program.  The hearsay and general nature of the "AWOL" testimony deprived the defendant of the opportunity to explore this key issue on cross-examination.

Moreover, the case worker had no direct or indirect knowledge of any of the details or circumstances of the juvenile's absence from the program.  As the case worker was not assigned to the juvenile's case until six weeks before the probation revocation hearing, he was not working with the juvenile when the alleged violations occurred.  The case worker also did not read the program reports related to the alleged "AWOL" violation.[9]  Instead, the case worker admitted that he

---

[9] The judge did not allow in evidence the program incident reports, covering seventeen separate dates, that were submitted by the probation officer.  After reviewing the incident reports, the judge acknowledged that some of the reports were unsigned and some were signed by different people, but that no one from the program would be testifying.  The judge, explicitly acknowledging the lack of reliability of the incident reports, stated, "I'd be reluctant to give [the incident reports] the same level or credibility as . . . a police report because they don't identify who is necessarily writing them, . . . and, based on that, . . . I'd be unwilling to admit them without somebody from the program coming."

based his testimony exclusively on information he learned through his "few conversations" with the program director.  The case worker failed to testify, however, that the information imparted to him from the program director was based on the latter's personal knowledge.  Thus, there was a risk that the nontestifying program director was the recipient of reports from other nontestifying program staff concerning the details of the juvenile's alleged noncompliance with the program rules.  Where neither the program director's reported statements nor the case worker's testimony fell into a hearsay exception, the case worker's testimony constituted inadmissible hearsay within hearsay.  See Commonwealth v. DePina, 476 Mass. 614, 623 (2017) ("Totem pole hearsay is admissible only if each of the multiple hearsay statements falls within an exception to the hearsay rule"); Mass. G. Evid. § 805 (2019) ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule in accordance with the common law, a statute, or a rule of court"). See also Brantley v. Hampden Div. of the Probate & Family Court Dep't, 457 Mass. 172, 185-186 (2010) (documents "comprised of abbreviated oral summaries of voluminous records made by persons who may have no firsthand experience with the case" were unreliable and judges' consideration of such documents violates litigants' due process rights).

Additionally, because the Commonwealth elected not to subpoena the program director, or any other knowledgeable program staff, there was no "information from other sources" corroborating the case worker's hearsay testimony.[10]  Hartfield, 474 Mass. at 484.

Conclusion.  Because the DCF case worker's hearsay testimony -- the only evidence of the alleged probation violations -- lacked the requisite substantial indicia of reliability, the judge abused his discretion in finding that the juvenile violated the conditions of his probation.  Accordingly, the order revoking probation and imposing sentence is reversed.

So ordered.

---

[10] At the October 2 hearing, the judge offered to subpoena the program director.  The probation officer, however, represented that the program director "had been available the last several court dates," and that she had informed the juvenile's attorney that the program director "would not being coming to court" "because [the juvenile] was no longer at the . . . program."  It is noteworthy that both the juvenile's attorney and the probation officer were aware that the program director would not attend the October 2 hearing.  Also, the probation officer did not respond to the judge's offer to issue a summons to secure the program director's attendance, despite the judge warning the probation officer, "Probation is the moving party.  If you want [the program director] here . . . I'll order a summons for him."  Nevertheless, the probation officer asserted that the juvenile's attorney wanted to move forward with the proceeding that day and that the DCF case worker would be called to testify that the juvenile was "in violation of cooperating with DCF and cooperating with his DCF placement."