NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-887

COMMONWEALTH

vs.

DANA R. SANTOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In April of 2021, the defendant pleaded guilty to operating a motor vehicle while under the influence of intoxicating liquor (OUI) and was placed on probation for one year.  The defendant also pleaded guilty to failing to stop for police and was ordered to pay a $100 fine.  Two additional charges, one for negligent operation of a motor vehicle and the other for leaving the scene of an accident, were continued without a finding.[1]

Arising out of a January 2022 alleged attack on his girlfriend, the defendant was charged, and eventually indicted, for multiple offenses.  The Commonwealth issued to the defendant a notice of probation violation based on the new charges.  The

---

[1] A charge of reckless operation of a motor vehicle was dismissed at the request of the Commonwealth.

notice of violation also alleged that he was in arrears in paying probation fees.  After an evidentiary hearing, a District Court judge found the defendant in violation of his probation and imposed a two and one-half year jail sentence for the OUI conviction, a two-year jail sentence for the negligent operation conviction, and a two and one-half year jail sentence for the leaving the scene conviction (all sentences to be served concurrently).  On the defendant's appeal, we affirm the revocation of the defendant's probation but vacate the sentences and remand for resentencing.

Background.  At the revocation hearing, the Commonwealth presented evidence of the following.  The defendant's girlfriend, with whom he shared a child who was not then in the parents' custody, lived in an apartment building.  A woman from the adjacent apartment who did not know the girlfriend placed a 911 call to report an ongoing altercation between her neighbor and an unidentified male.  A recording of the 911 call was admitted in evidence and we have listened to it.  According to the 911 caller, the argument had begun inside the girlfriend's apartment some two hours earlier, but at that moment had erupted into violence with the two "in the hallway right in front of my door."  The 911 caller exclaimed that the man was "beating the fuck out of her right now," with the woman "screaming 'help me.'"  Her concern for the girlfriend's safety and her own fear

2

of the male are palpable on the call.  At one point, the 911 caller reported that the defendant had a gun.  During the 911 call, the caller's daughter could be heard telling her mother that the man had a gun.  The Commonwealth admitted the grand jury minutes.  During her grand jury testimony, the 911 caller stated that she heard the woman scream that her attacker "has a gun."

The police responded.  After they knocked on the door, they heard "scuffling," but by the time the girlfriend answered, she was alone.  She initially told the police that no one else had been in the apartment.  After a police officer told her that they had heard a male in the apartment as they were approaching it, she told them that the male was someone other than the defendant.  Meanwhile, however, the police found the defendant after following a blood trail down to the basement that was accessible from a back stairway.  Confronted with this information, the girlfriend told the police that she had lied because she was working to regain custody of the child she shared with the defendant and feared the altercation would inhibit her progress.  She told police that after showing up intoxicated at her apartment at five o'clock in the morning, the defendant verbally and physically attacked her, including by grabbing her around the neck.  The fact that the girlfriend's neck was red and exhibited several scratches or other marks was

3

confirmed by multiple sources, including photographs admitted in evidence. The girlfriend told police that the defendant had threatened her with a gun, and she admitted that she had stabbed the defendant with a knife.

When the police found the defendant, he had lacerations on his face and arm, and he was bleeding profusely. The police did not find a gun in the basement, but they located one -- with blood on it -- inside a laundry hamper that would have been on the defendant's pathway to the basement. The girlfriend identified the gun as the one with which the defendant had threatened her.

Discussion. 1. Sufficiency of the evidence. At the probation revocation hearing, the Commonwealth did not call any witnesses, but instead relied on documentary evidence. This included a recording of the 911 call related to the altercation between the defendant and his girlfriend; the police reports regarding that incident (which included the observations made by the responding officers at the scene and the statements made to them by the 911 caller, the girlfriend, and the defendant); grand jury minutes related to that incident (which included testimony from the 911 caller and of the responding police officers); the girlfriend's application for a protective order; photographs; various probation records; and the defendant's court activity record information (CARI). The defendant called

4

five witnesses, including two of the responding officers, the defendant's sister, an investigator, and a medical expert.

The defendant conceded that there was an altercation between him and the girlfriend in January 2022, but he asserted that the girlfriend was the aggressor and that he acted in self-defense. Because it was uncontested that the girlfriend had stabbed him, the Commonwealth bore the burden of proving by a preponderance of the evidence that the defendant had not acted in self-defense. Commonwealth v. Ogarro, 95 Mass. App. Ct. 662, 666-667 (2019). The defendant principally argues that the proof the Commonwealth offered of the probation violations amounted to hearsay that lacked sufficient indicia of reliability. It long has been established that hearsay is admissible so long as that evidence is deemed sufficiently reliable. See Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016).

While recognizing that police reports and grand jury testimony can be accepted as reliable hearsay in the probation revocation context in some circumstances, the defendant asserts that there were particular reasons not to accept them here. For example, he asserts that the girlfriend had a motive to lie to the police -- both to justify her stabbing him and to protect her efforts to regain custody of their child -- and that it is uncontested that she had lied to the police when they first spoke with her. With respect to the firearm-related charges,

5

the defendant maintains that there was insufficient proof based on reliable hearsay that the gun found in the girlfriend's apartment was his or that he used it during the attack.

Passing over whether the defendant adequately preserved all of his claims about unreliability, we conclude that the order of revocation must be affirmed because the judge did not err in finding sufficient reliable hearsay to support a finding that the defendant violated his probation.[2]  As an initial matter, it is clear that the judge understood he could rely on any out-of-court statements on which the Commonwealth was relying only if the statements were accompanied by sufficient indicia of reliability in accordance with the factors recognized by the cases.  See Hartfield, 474 Mass. at 484 (listing such factors). Specifically, either by checking off the pertinent boxes on the court form or by making handwritten notes, the judge noted that the relevant hearsay was "based on personal knowledge and/or direct observation," "involve[d] observations recorded close in time to the events in question," "was provided under circumstances that support the veracity of the source," was

---

[2] The defendant additionally argues that the judge improperly relied on bad act evidence, because the judge referenced the defendant's CARI on the list of evidence on which he relied.  No objection to the admission of the CARI was lodged, and, in any event, the defendant's criminal record was relevant to one of the new charges he faced, which was for a subsequent offense.

"factually detailed" and "internally consistent," and was "substantially trustworthy and demonstrably reliable." We discern no error in these observations.

As a second matter, at the center of the Commonwealth's case was the 911 call in which the caller dramatically relayed the ongoing attack going on directly outside her door. That evidence was independently admissible as an excited utterance. See Commonwealth v. Napolitano, 42 Mass. App. Ct. 549, 557 (1997). Moreover, there was, in any event, little reason to doubt the reliability of what the caller -- who had no ties to the girlfriend -- was reporting in real time. Specifically, where the 911 caller states that the defendant was "beating the fuck out of her right now," with the woman "screaming 'help me.'" We also note that the girlfriend's screaming for help during the attack and her relaying at that time that the defendant had a gun would constitute independently admissible excited utterances, and that the defendant has not pointed to any reasons to question the reliability of such statements.

Finally, with respect to the gun, there was evidence both that the caller heard the girlfriend scream that the defendant had a gun and that she was told by her own daughter about the gun during the course of the call.[3] Moreover, the claims

---

[3] We are unpersuaded by the defendant's suggestion that the fact that the 911 caller's daughter can be heard telling the caller

7

regarding the gun were corroborated when the police found a gun -- which had what apparently was the defendant's blood on it -- stashed along the path that the defendant used to flee the scene. Other physical evidence also cut against the defendant's allegations of self-defense, such as the scratches and other marks around the girlfriend's neck.[4]

To be sure, it was uncontested that the girlfriend changed her account to police, and that she had reasons to want to paint the defendant as the aggressor.[5] In the end, however, we need not decide whether every statement she made to the police during their questioning of her had sufficient indicia of reliability to be accepted as reliable hearsay. The excited utterances that the girlfriend made while the incident was unfolding, the 911 call, the 911 caller's grand jury testimony, and the physical

_____

about the gun during the 911 call demonstrates the unreliability of the caller's grand jury testimony that she herself heard the woman scream that he had a gun. Both could be true.

[4] We recognize that the defendant called a medical expert who testified that someone who had been strangled would likely exhibit more bruising than shown in the photographs. The judge was not required to credit such testimony.

[5] The evidence of potential bias was not as strong as it might first appear. As the Commonwealth notes in its brief, if the girlfriend's behavior had been driven by her fear of her child not being returned to her custody, she unlikely would have called attention to the altercation. Moreover, her fear of not regaining custody of her child also provided a plausible reason why she initially would have lied to the police about the incident.

8

evidence found at the scene, provided sufficient bases for the judge to conclude by a preponderance of the evidence that the defendant's assault on the girlfriend was not justified by self-defense and that he violated firearm laws, and therefore was in violation of the terms of his probation.[6]

2. <u>Sentencing</u>. It is axiomatic that "[t]he revocation of probation is not punishment for commission of any subsequent crime charged, but rather is a remedial sanction arising from the sentence imposed for the earlier offense." <u>Commonwealth</u> v. <u>Holmgren</u>, 421 Mass. 224, 227 n.1 (1995). In urging the judge to impose the harshest sentences he could, the prosecutor hardly mentioned the motor vehicle convictions for which the defendant was being sentenced. Instead, the prosecutor pointed to the seriousness of the offenses that were the subject of the 2022 indictments. Thus, for example, the prosecutor argued that the

---

[6] In its notice of violation, the Commonwealth stated that the defendant was in arrears in paying probation fees. In his findings, the judge found that the defendant was indeed in arrears. Although the evidence supporting this was sufficient to support that finding, we agree with the defendant that "[i]t is clear from the transcript that the [probation revocation] hearing was focused on the 2022 domestic [abuse] charges, not the alleged arrears, therefore it is highly likely that the [the judge] would have reached a different disposition if he had he not . . . found that [the defendant] committed the 2022 charges." We additionally note that in its closing argument, the Commonwealth did not mention the arrearage even once, and that the judge ultimately waived all probation fees. We do not rely on the existence of the arrearage as an independent ground supporting the revocation of probation.

defendant's attack on his girlfriend showed that his "criminal behavior is ratcheted up, because now we have an allegation of violence with this in here."  Where the judge then, without explanation, imposed the maximum sentences he could, we lack confidence that the judge sentenced the defendant without attention to improper considerations.  A remand for resentencing is therefore in order.  See Commonwealth v. Suarez, 95 Mass. App. Ct. 562, 577 (2019) ("In cases where there is reason to think a sentencing judge may have considered uncharged conduct for an improper purpose, the courts have not hesitated to order resentencing").

Conclusion.  We affirm the revocation of the defendant's probation but vacate the sentences and remand for resentencing in accordance with the terms of this memorandum and order.

So ordered.

By the Court (Wolohojian,
 Milkey & D'Angelo, JJ.[7]),

Anne M. Thomas

Assistant Clerk

Entered:  January 25, 2024.

---

[7] The panelists are listed in order of seniority.